OPINION OF THE COURT
Julian A. Hertz, J.
 After a jury trial, this defendant was convicted of violating section 195.05 of the Penal Law, obstructing governmental administration, a class A misdemeanor, punishable by a fine not to exceed $1,000 and/or imprisonment for a term of *148 up to one year. The jury also convicted him of violating section 153.01 of the Health Code of the City of New York, littering, a misdemeanor, punishable by a fine of not more than $1,000 and/or up to one year in jail.
It seems appropriate to include references to certain facts which may serve to assuage criticism along the lines that the matter before the court is de minimis and does not warrant the expensive prosecutorial and judicial time devoted to it.
The jury has found the defendant did litter the sidewalk in front of the premises at 261 West 42nd Street, on April 25, 1977, at about 4:30 a.m., by placing two bags of refuse at the curb. The refuse consisted of trash paper enclosed in the two bags. He did this while being observed by two police officers watching him from their marked police vehicle, which was patrolling the sector. The patrol car drew up to defendant and, as it did so, at least one of the officers realized that the name and identity of defendant were known to him. He was, by his own admission, an employee of the store located at 265 West 42nd Street.
While not an issue before the court, it is pertinent to explain that there are pending against the defendant in this court a substantial number of unrelated and unresolved matters. These are sufficient in number to indicate to the court that, at the very least, in the eyes of various police officers who have proceeded against him, this defendant is creating a considerable nuisance, and, indeed, his conduct has compelled the District Attorney to prosecute the pending charges to the point of this jury trial and other trials which are to follow. It should be added that efforts have failed to make an adjustment (of considerable liberality in the defendant’s favor) of these pending cases. In the light of the convictions resulting from this trial, that failure must be attributed to the defendant and should not be thought the product of any degree of intransigence on the part of the District Attorney (at least as to those negotiations carried on before this Judge).
According to the proof at trial, the defendant was addressed by the recorder seated in the passenger seat of the police vehicle, which had drawn up immediately next to where the defendant had littered. Police Officer Quinn informed the defendant that he was to receive a summons, to which the defendant replied, "Go f— yourself.” This linguistic gem could, of course, hardly pacify. But to add fuel, the defendant ignored the demand for identification (a prerequisite to the *149 summons process), and he proceeded to walk away across the sidewalk and re-entered his store. He closed and locked the door.
The officers then exited their vehicle and sought admission to the store. They knocked on the glass door, calling on the then visible defendant to open the door. This was accompanied by further reference to the intent to issue process. When the door was not opened, a call was made and answered by a patrol supervisor, a sergeant, now Lieutenant Sullivan.
Attempts to gain admission continued for a considerable number of minutes, culminating in a warning from the sergeant that failure to comply with the order to open the door would be followed by forcible entry and arrest. That followed when defendant failed to yield. First charged at the scene with littering and resisting arrest, defendant was later formally charged with the afore-mentioned two charges.
After the close of the People’s case, the defendant moved to dismiss both charges. The court reserved decision on that motion and now proceeds to dispose of it.
Reference to the complaint discloses the defendant is charged with obstructing governmental administration in the following language: "Deponent further states that in effecting his authorized duty, defendant did obstruct said duty in that the defendant did flee in attempt to avoid being summoned.”
A criminal court accusatory instrument, to be sufficient on its face, must establish, if true, every element of the offense charged and the defendant’s commission thereof (CPL 100.40).
Section 195.05 of the Penal Law states as follows: "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act.”
It is plain that the alleged act of flight has been further defined by the evidence in this case. Viewed in a light most favorable to the People, the evidence indicates that the defendant walked away from the officers and did not heed their request for identification. Additionally, the evidence at trial disclosed other acts, such as closing and locking the door of the store. These acts were not charged in the information and were only adduced at trial.
*150 An essential element of the crime of obstructing governmental administration, to be charged in an information, must be an act of either (1) intimidation or (2) physical force or interference or (3) an independently unlawful act.
Plainly, ignoring an officer’s request for identification is not a crime,.nor does that act supply any such element. Though it is clear that such conduct risks pursuit and arrest, no crime has been charged here. "The requirement that an indictment and an information must state the crime with which a defendant is charged, and the particular acts constituting that crime is more than a technicality; it is a fundamental, a basic principle of justice and fair dealing, as well as a rule of law.” (People v Zambounis, 251 NY 94, 97.)
The Court of Appeals also said in People v Harper (37 NY2d 96, 99): "A valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution (People v McGuire, 5 NY2d 523, 527; People v Scott, 3 NY2d 148, 152).”
In Harper (supra), the court held that even a stipulation agreed to by both the People and the defendant is not sufficient to amend an accusatory instrument if not done in strict compliance with CPL 100.45. In this case there was no amendment at any time. The defendant has not been charged with a crime, since this court recognizes as a matter of law that "fleeing” from an officer prior to arrest is not a crime. Consequently, the motion to dismiss the charge of obstructing governmental administration (Penal Law, § 195.05), upon which the court reserved decision, is now granted and the charge is dismissed.
Similarly, and although not an issue before the court, it is observed that it is no crime to refuse to open a door to police officers. Such a refusal may create rights and/or duties for law enforcement officials, i.e., to proceed to obtain a warrant to enter and search; or to remove the obstacle by force, as done in this case.
Were the law otherwise, it would follow that whenever any barrier is placed in the path of process and/or arrest, this class A misdemeanor (obstructing) could be added. The effect of that added charge in this case, as is often true, is to divert attention from the initial alleged criminality or transgression. Thus, the issue before the jury in this case should have been limited to whether or not the defendant littered. Instead, the *151 jury may well have been equally or more concerned by the question of whether or not he acted improperly toward the officers. The court notes that armed police officers need no assistance from this statute to enhance their powers. They are empowered to, and here they did, proceed to vindicate the police power by taking such steps as were necessary to enforce submission to that power.
The section charged (Penal Law, § 195.05) was not designed for this situation. It was, rather, intended to make criminal conduct designed to interrupt or shut down administrative governmental operations. This court fears that there is a tendency to pervert its purpose in the manner disclosed in this case. This Judge would discourage the practice as unnecessary and counterproductive.
Next, the court turns to the motion addressed to the alleged violation of section 153.01 of the New York City Health Code (littering). Problems arise consequent upon the existence of a section in the Administrative Code of the City of New York in chapter 31, Department of Sanitation. Section 755(2)-7.0 (littering prohibited) is almost identical with section 153.01 of the Health Code.[1]
The only difference is that a violation of the Health Code is a misdemeanor punishable by a fine of up to $1,000 and/or up to a year in jail, while a violation of the Administrative Code is an offense punishable by a fine of not less than $10 nor more than $150, or by imprisonment not to exceed 10 days or both.[2] In one instance littering is actually a crime, and in the other it is a mere violation.
*152 The defendant claims that the existence of two almost identical statutes proscribing the same conduct, with such a disparity in authorized punishment and with no guidelines for the application of either, violates his rights of equal protection and due process. He claims this is so because the police and prosecutor have absolute discretion as to which section should be charged, and because there is no definitive punishment for the proscribed acts. The defendant further asks this court to find the Health Code section unconstitutional as a violation of due process.
The leading case in the area governing the situation where two statutes proscribe the same conduct and allow a wide disparity of punishment is People v Eboli (34 NY2d 281).[3] That case deals with misdemeanor coercion and felony coercion, which are almost identical when the coercion is committed by instilling a fear that a person will be physically injured or that property will be damaged.
In Eboli, the defendants were convicted of attempted coercion in the first degree, a class E felony. They challenged the statute because the same elements are required for coercion in the second degree, an A misdemeanor, and they claimed that leaving discretion as to - which to charge solely with the prosecutor was a violation of their constitutional guarantees of due process and equal protection.
In affirming the conviction, the court said (p 288): "This distinction is more apparent than real. As we noted above, read in light of the Commentaries and the related extortion statutes, it seems clear that despite the identity in language, there is a guideline differentiating felony and misdemeanor coercion”.
There are no guidelines or distinctions to be found in either littering provision save for the fact that one appears in the Health Code and the other is in the Department of Sanitation chapter of the Administrative Code.
To avoid the possible constitutional infirmities alleged by the defendant, a statutory amendment providing guidelines would be appropriate. In this connection, prosecution of a *153 Health Code violation should be substantiated by evidence of a danger to public health.
Regard for the rule that presumes the constitutionality of statutes and ordinances and that such questions are appropriately reserved for appellate review, and recognition of the wide prosecutorial discretion approved in Eboli motivates this court to deny the defendant’s motion to dismiss the littering charge after the People’s case.
Despite this, the court will, of course, at sentence, consider the contents of the probation investigation and the appropriateness of limiting punishment to the extent authorized had the defendant been charged with the offense rather than the misdemeanor.

. Administrative Code, § 755(2)-7.0: "Littering prohibited. — 1. No person shall litter, sweep, throw or cast, or direct, suffer or permit any servant, agent, employee, or other person under his control, to litter, sweep, throw or cast any ashes, garbage, paper, dust or other rubbish and refuse of any kind whatsoever, in or upon any street or public place, vacant lot, air shaft, areaway, backyard, court or alley.”
NY City Health Code, § 153.01: "Littering prohibited. No person shall litter, sweep, lay or throw, or permit his employee or any other person under his control to litter, sweep, lay or throw any ashes, dirt, garbage, refuse or rubbish of any kind in or upon any street or public place, lot, air shaft, areaway, backyard, court or alley.”

. Administrative Code, § 558: "Health Code * * * (d) Any violation of the health code shall be treated and punished as a misdemeanor.”
Penal Law, § 55.10, subd 2, par (b): "Any offense defined outside this chapter which is declared by law to be a misdemeanor without specification of the classification thereof or of the sentence therefor shall be deemed a class A misdemeanor.”
Administrative Code, § 755(21-7.0: "8. The violation of any provision of this section shall constitute an offense punishable by a fine of not less than ten dollars nor more than one hundred fifty dollars, or by imprisonment not to exceed ten days or both. (Subd. 8 amended by L. L. 1966, No. 41, Nov. 16; L. L. 1977, No. 13, Jan. 25, eff. Feb. 24.1”

. In a most recent case, People v Vaccaro (44 NY2d 885), the Court of Appeals cited Eboli, for the proposition that overlapping elements do not render the statutes unconstitutional where the elements of criminal possession of a weapon in the second and fourth degrees are identical in those circumstances where the culpable act is possession of a loaded firearm.