OPINION OF THE COURT
Paul G. Feinman, J.
Defendant moves to dismiss the accusatory instrument on the ground that it is facially insufficient. For the reasons stated below, defendant’s motion is denied.
A misdemeanor information is sufficient on its face when it has both an accusatory part designating each and every offense charged and a factual part containing a statement of the complainant that alleges facts of an evidentiary nature that tend to support the charges (CPL 100.15 [2], [3]). The nonhearsay allegations must provide reasonable cause to believe that the defendant committed the offense(s) charged, and must establish, if true, every element of the offense charged (CPL 100.40 [1]).
An accusatory instrument will be dismissed as facially insufficient if it fails to allege nonhearsay facts of an evidentiary nature that support or tend to support each and every element of the offenses charged and the defendant’s commission thereof (CPL 100.15 [3]; 100.40 [1] [c]; People v Alejandro, 70 NY2d 133 [1987]). However, to be facially sufficient an accusatory instrument need only establish a “prima facie” case; it need not establish defendant’s guilt beyond a reasonable doubt (People v Moncayo, NYLJ, Apr. 10, 1997, at 29, col 4 [App Term, 2d & 11th Jud Dists] [dismissal of information reversed where motion court confused reasonable cause pleading standard with proof beyond a reasonable doubt trial standard]).
According to the accusatory instrument, on July 20, 1998, at about 11:50 a.m., in the auditorium of One Police Plaza, “where the City of New York was holding an auction [of community gardens],” defendant was observed to “rip a manila envelope in half and release numerous live crickets” onto the auditorium floor. This “created a public disturbance/inconvenience in that said auction was disrupted and suspended” as the people at *50 tending the auction “began to scream, jump onto chairs, run to the exits of said auditorium,” and “to leave/avoid the area.” A closed manila envelope “filled with crickets” was recovered from defendant’s briefcase.
Obstructing Government Administration
The Penal Law provides that a person is guilty of obstruction of governmental administration in the second degree when, by use of “intimidation, physical force or interference, or by means of any independently unlawful act,” he or she “intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function.” (Penal Law § 195.05.) This statute has been interpreted to require “direct physical force or interference,” and is not to be read broadly as a “catchall” for any behavior that might tangentially interfere with governmental functioning (People v Simon, 145 Misc 2d 518, 522 [Crim Ct, NY County 1989]; People v Offen, 96 Misc 2d 147, 150 [Crim Ct, NY County 1978]).
In the case at bar, the accusatory instrument alleges that defendant’s actions in releasing live crickets into a room in which an auction was being conducted obstructed and impaired the “administration of law or other governmental function,” namely an auction conducted by the City of New York. The People argue that defendant’s action was an “independent unlawful act” (response, at 3), in that the release of the crickets “created a public disturbance” and “disrupted and suspended the auction.” Defendant has also been charged with disorderly conduct (Penal Law § 240.20 [4]) in this regard. The People cite People v Offen (supra, 96 Misc 2d, at 151) for the proposition that Penal Law § 195.05 was “intended to make criminal conduct designed to interrupt or shut down administrative governmental [functions].” Similarly, People v Case (42 NY2d 98, 102 [1977]) gives as one example of conduct prohibited by the statute the engaging in disorderly conduct in the chamber of a legislative body with the intent to obstruct the legislative session. The People analogize defendant’s conduct to that discussed in Case.
Defendant asserts that he is a member of “Jiminy Cricket,” one of several organizations and community groups that oppose the City’s selling of so-called “vacant lots.” He argues that his actions were a protest and, as such, an act of constitutionally protected speech, not an “independent unlawful act” within the meaning of Penal Law § 195.05 (affirmation, at un *51 numbered 4, para 7). The court notes that the People do not seek to punish defendant for his viewpoint on the community garden issue. Rather, they seek to hold him accountable for his conduct in making that viewpoint known. Nothing alleged in the accusatory instrument pertains to defendant’s speech qua speech.
Any potential defense must be addressed to the trier of fact and cannot be addressed by a court reviewing the sufficiency of the pleadings. Whether there is a valid basis for submitting a justification or necessity defense to the jury is a determination to be made by the trial court.
Here, defendant has moved to dismiss the accusatory instrument on the ground that it is facially insufficient. The allegation that defendant released live crickets into the auction room, causing the attendees to scream, climb onto chairs, and run to the exits, and resulting in a suspension of the proceedings, is a sufficient demonstration at the pleading stage of physical interference, as well as an independent unlawful act. As the People have alleged a prima facie case of obstruction of governmental administration, defendant’s motion to dismiss the first count is denied.
Disorderly Conduct
A person is guilty of disorderly conduct when,
“with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof * * *
“[w]ithout lawful authority, he disturbs any lawful assembly or meeting of persons”. (Penal Law § 240.20 [4].)
The Penal Law states that a person acts “intentionally” when his or her conscious objective is to cause a particular result or to engage in particular conduct (Penal Law § 15.05 [1]). A person acts “recklessly” when he or she is aware of but consciously disregards “a substantial and unjustifiable risk” that a particular result will occur, with the risk being of such nature and degree that disregard constitutes “a gross deviation from the standard of conduct that a reasonable person would observe in the situation”. (Penal Law § 15.05 [3].)
Here, the accusatory instrument alleges that defendant “rip[ped] a manila envelope in half and release [d] numerous live crickets” onto the auditorium floor of One Police Plaza, during the administration of an auction. This resulted in a “public disturbance/inconvenience” as people “began to scream, jump onto chairs,” and “run to the exits.” The auction was “suspended.”
*52 Defendant argues that this count of the accusatory instrument is insufficient in that defendant did not “intend to cause public alarm,” but rather intended “to interrupt an unlawful and unethical City auction,” and that the auction itself was “not a lawful official function.” (Affirmation, at unnumbered 4, para 5.) The question of intent is one for the trier of fact to determine. The requisite element of intent need only be charged in the accusatory part of the accusatory instrument since intent is an “operation of the mind” (People v Sassower, NYLJ, Nov. 6, 1998, at 23, col 3 [App Term, 9th & 10th Jud Dists]). Because “ ‘intent’ * * * cannot be the subject of a non-hearsay evidentiary allegation, it * * * is necessary only that there be alleged evidentiary facts from which intent may be inferred.” (People v Leiner, NYLJ, Oct. 15, 1997, at 34, col 5 [App Term, 2d & 11th Jud Dists], Iv denied 91 NY2d 894 [1998].)
The charge of disorderly conduct requires a showing of either intent to cause public inconvenience, annoyance or alarm, or recklessness in creating such a risk. The factors to be considered include: (1) the extent to which defendant’s conduct annoyed others; (2) whether defendant persisted in the conduct after warnings by others or the police; (3) whether defendant’s conduct created at least the risk that disorder might result; and (4) whether defendant’s conduct occurred in a public location (People v Maher, 137 Misc 2d 162, 168 [Crim Ct, NY County 1987], ajfd 142 Misc 2d 977 [App Term], Iv denied 74 NY2d 794 [1989]). In Maher, a single abortion protester was found guilty of disorderly conduct for repeatedly coming from behind police barriers to distribute literature, following pedestrians as they entered a particular building, and even blocking their way in order to talk with them, with numerous complaints received by the police department that day from the abortion clinic. In its reasoning Maher relies on People v Nixon (248 NY 182 [1928] [upholding convictions of certain labor protestors who disobeyed officers’ orders to disperse their large groups, citing possibility of disorder]), People v Carcel (3 NY2d 327, 332 [1957] [dismissing charges against two demonstrators in front of United Nations, one with placard, one with literature, where it was not shown that defendants caused *53 “any serious annoyance to pedestrians or that their manner was threatening or abusive”]), and People v Todaro (26 NY2d 325, 329 [1970] [upholding charges against defendant who was part of small group standing on 42nd Street and 7th Avenue which was told three times by officer to move; after third time, defendant yelled obscenity. Court found risk of public inconvenience, annoyance or alarm from defendant’s language and his refusal to move]).
Applying these four factors to the case at bar, the court finds that the conduct alleged in the accusatory instrument establishes, if true, that defendant engaged in disorderly conduct. His alleged release of crickets into a room, resulting in people screaming, jumping onto chairs, and running to the exits, and causing the auction to be suspended, would show at least a reckless disregard for the safety of others. His conduct created a risk that disorder might result, and it did. His actions occurred in a public location, in the auditorium of One Police Plaza where a public auction was being held.
Defendant’s assertions that the auction was itself “unlawful and unethical” (affirmation, at unnumbered 5, para 9), and that he was attempting to protest and interrupt the City’s auction, are, once again, arguments that this court cannot address in the context of a motion to dismiss for facial insufficiency. Again, the issue is one to be determined by the trier of fact at trial. Whether the evidence at trial will support the People’s allegation that the auction was a lawful official function, or will support defendant’s claims that it was an unlawful act, cannot be determined on affidavits. The court notes, however, whether the City has the “right” to sell off lands which, defendant contends, have been “lawfully adversely possessed” by certain community organizations (affirmation, at unnumbered 5, para 8), is not generally determined by the Criminal Court. Such a claim is more appropriately litigated in the Civil Term of the Supreme Court in the form of a declaratory judgment action, or other action, seeking to determine who has title to the disputed land. As the accusatory instrument makes out a prima facie case of disorderly conduct, defendant’s motion to dismiss the second count is denied.
The court will not address the remaining branches of *54 defendant’s omnibus motion, pursuant to the ruling of another Judge of this court on January 4, 1999.*
The People’s motion for reciprocal discovery is granted.

 Defendant was arraigned on July 21, 1998, and charged with obstruction of government administration in the second degree (Penal Law § 195.05) and disorderly conduct (Penal Law § 240.20 [4]). On October 8, 1998, a corroborating affidavit was served and filed, the accusatory instrument was deemed an information, and a motion schedule was set. On November 12, 1998, the next adjourned date, defendant had not yet filed and served his omnibus motion. A second and final motion schedule was set. On January 4, 1999, the return date, defense counsel first served and filed the omnibus motion. Accordingly, the Judge presiding at the calendar call that day precluded all defense motions but for the instant motion to dismiss. Presumably the Judge reasoned that although the 45-day period for making motions had already expired, the instant motion went to the issue of the court’s jurisdiction. The People timely served and filed their response on this limited issue at the next adjourned date.