2002 UT 131

**AMERICAN FORK CITY, Plaintiff and Respondent,**

v.

**Luis PENA–FLORES, Defendant and Petitioner.**

No. 20010056.

Supreme Court of Utah.

Dec. 27, 2002.

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., Salt Lake City, and James "Tucker" Hansen, American Fork, Bruce R. Murdock, Salem, for plaintiff.

Margaret P. Lindsay, Provo, for defendant.

RUSSON, Justice:

¶ 1 Luis Pena–Flores ("Pena–Flores") was convicted in October 1999 of interfering with a peace officer seeking to effect a lawful arrest or detention, a class B misdemeanor in violation of Utah Code Ann. § 76–8–305 (1999). His conviction was affirmed by the court of appeals in *American Fork City v. Pena–Flores,* 2000 UT App 323, 14 P.3d 698. On certiorari to this court, Pena–Flores reasserts his claim that his conviction should be overturned because the detention with which he interfered was not lawful. We affirm.

## BACKGROUND

¶ 2 The facts and procedural history are not in dispute. On July 10, 1999, police officers, members of a special gang interdiction task force, were patrolling the Steel Days carnival in American Fork. The carnival in previous years had been the scene of many fights, and the week before there had been a fight between two rival gangs, the "Surenos" of American Fork and "VML" of Payson. The task force had received information from street contacts and anonymous phone calls that another fight was brewing. Members of VML were reported to be coming from Payson that evening, possibly with a gun, to retaliate against the Surenos in American Fork. The task force had been tracking the activity of these groups for some time as the result of a gang-related homicide seven months earlier. There had also been violence between these two gangs just the previous day.

¶ 3 The gang interdiction unit patrolling the carnival was composed of about ten officers, each wearing a uniform shirt with "Police" printed in large letters on the front and back. In addition, each officer wore a police badge on the front of the shirt and a hat also clearly marked "Police." The unit's purpose was to monitor potential gang violence and update intelligence files, a standard gang investigation procedure the unit follows at all carnivals in the Utah County and Juab County areas. This procedure consists of detaining gang members, photographing them, and having them fill out information cards. At the carnival that evening, officers observed members of the Provo "Surenos" and the "Lay–Low Crips," in addition to members of the Payson VML and the American Fork Surenos.

¶ 4 At around 8:00 p.m., the task force was detaining members of these gangs, identified by tattoos and monikers on their hands. The gangs had congregated at the back corner of the carnival, and the officers were taking them individually to the front to update photographs and information cards. Pena–Flores, who was not known to the officers, stepped forward and told the detainees they did not have to go with the police, answer questions, or have their pictures taken. Officer Andre Leavitt ("Leavitt"), a nine-year veteran of the task force, told Pena–Flores to keep quiet and to step back out of the situation. Pena–Flores was also agitating the other people who were with him, and the officers at the scene had to instruct these people to step back as well. Despite these warnings, Pena–Flores stepped forward again and continued to encourage noncompliance with the police. At that point, Leavitt escorted Pena–Flores to the front of the carnival and arrested him for interfering with a peace officer seeking to effect a lawful arrest or detention.

## RULING OF THE COURT OF APPEALS

¶ 5 Pena–Flores appealed his subsequent conviction for interfering, claiming that the trial court had misinterpreted the interfering statute, Utah Code Ann. § 76–8–305. *See American Fork City v. Pena–Flores,* 2000 UT App 323, 14 P.3d 698. Pena–Flores argued that the statutory "seeking to effect a lawful arrest or detention" language applies only if the arrest or detention is ultimately found to be lawful. Pena–Flores claimed that the detentions of the gang members were unlawful because they were not supported by reasonable suspicion and that his conviction should be accordingly overturned.

¶ 6 The court of appeals affirmed the conviction, holding that

> [s]o long as a police officer is acting within the scope of his or her authority and the

detention or arrest has the indicia of being lawful, a person can be guilty of interfering with a peace officer even when the arrest or detention is later determined to be unlawful.

*Id.* at ¶ 11. The court of appeals determined, based on our ruling in *State v. Gardiner*, 814 P.2d 568 (Utah 1991), and the plain language of section 76–8–305, that Pena–Flores' interpretation requiring that the underlying arrest or detention be lawful "reads out of the statute the phrase 'seeking to effect.' " *Pena–Flores*, 2000 UT App 323 at ¶ 16, 14 P.3d 698. The court of appeals concluded that "the statute is intended to protect law enforcement officers who are either making a lawful detention or arrest, or who are seeking to effect a lawful detention or arrest." *Id.*

## STANDARD OF REVIEW

 ¶ 7 " 'When exercising our certiorari jurisdiction, we review the decision of the court of appeals and not that of the trial court.' " *Collins v. Sandy City Bd. of Adjustment*, 2002 UT 77, ¶ 11, 52 P.3d 1267 (quoting *Longley v. Leucadia Fin. Corp.*, 2000 UT 69, ¶ 13, 9 P.3d 762). " 'On certiorari, we review the decision of the court of appeals for correctness.' " *Collins*, 2002 UT 77 at ¶ 11, 52 P.3d 1267 (quoting *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 11, 48 P.3d 968). Also, "[w]e may affirm the court of appeals' decision on any ground supported in the record." *Collins*, 2002 UT 77 at ¶ 11, 52 P.3d 1267; *see also Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158.

## ANALYSIS

¶ 8 Section 76–8–305 of the Utah Code reads as follows:

A person is guilty of a class B misdemeanor if he has knowledge, or by the exercise of reasonable care should have knowledge, that a peace officer is seeking to effect a lawful arrest or detention of that person or another and interferes with the arrest or detention by:

(1) use of force or any weapon;

(2) the arrested person's refusal to perform any act required by lawful order:

(a) necessary to effect the arrest or detention; and

(b) made by a peace officer involved in the arrest or detention; or

(3) the arrested person's or another person's refusal to refrain from performing any act that would impede the arrest or detention.

Utah Code Ann. § 76–8–305 (1999).

 ¶ 9 " 'When interpreting statutes, we determine the statute's meaning by first looking to the statute's plain language, and give effect to the plain language unless the language is ambiguous.' " *Wilson Supply, Inc. v. Fradan Mfg. Corp.*, 2002 UT 94, ¶ 14, 54 P.3d 1177 (quoting *Blackner v. State Dep't of Transp.*, 2002 UT 44, ¶ 12, 48 P.3d 949); *see also State Dep't of Natural Res. v. Huntington–Cleveland Irrigation Co.*, 2002 UT 75, ¶ 13, 52 P.3d 1257. Also, " '[t]he best evidence of the true intent and purpose of the Legislature in enacting the Act is the plain language of the Act.' " *State v. Hunt*, 906 P.2d 311, 312 (Utah 1995) (quoting *Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 906 (Utah 1984)). Furthermore, "this court has a 'duty to construe a statute whenever possible so as to . . . save it from constitutional infirmities.' " *State v. Morrison*, 2001 UT 73, ¶ 12, 31 P.3d 547 (quoting *In re Marriage of Gonzalez*, 2000 UT 28, ¶ 23, 1 P.3d 1074 (further quotation omitted)).

¶ 10 A reading of the plain language of the statute in question as applied to the facts of this case shows that Pena–Flores was properly arrested and convicted for violation of Utah Code Ann. § 76–8–305(3). The statute clearly states that a person is guilty of a class B misdemeanor if he has knowledge, or by the exercise of reasonable care should have knowledge, that a peace officer is seeking to effect a lawful arrest or detention and interferes with that arrest or detention by, among other things, refusing to refrain from performing any act that would impede that arrest or detention.

¶ 11 In the present case, clearly identified police officers were seeking to effect the lawful detention of gang members at a carnival. Pena–Flores apparently did not agree with what the police were doing and told the detainees that they did not have to cooper-

ate. Pena–Flores was also agitating the other people who were with him. As a result, an officer told Pena–Flores to keep quiet and to step back out of the situation. Police officers had to instruct the people who were with Pena–Flores to step back as well. Despite these warnings, Pena–Flores stepped forward again and continued to encourage noncompliance with the police. It was only then that an officer escorted Pena–Flores to the front of the carnival and arrested him for interfering.

¶ 12 It is clear that Pena–Flores' acts were impeding the detention in question. It is also clear that he had knowledge that police officers were involved and that after repeated requests from these officers he refused to refrain from his acts. Pena–Flores violated the plain language provisions of subsection (3) of the statute. Accordingly, his arrest and subsequent conviction were proper.[1]

¶ 13 It is irrelevant to the plain language of the statute whether the detentions of gang members were lawful or unlawful. As we have previously stated, "the fact that [a peace officer's] attempted [arrest or detention] was later found to be unlawful does not divest [the officer] of his authority." *Gardiner*, 814 P.2d at 575. The plain meaning of the "seeking to effect" language makes it clear that the reach of the statute is not contingent on the lawfulness of the underlying arrest or detention, but rather, as the court of appeals correctly concluded, the "officer ... acting within the scope of his or her authority and the detention or arrest ... [having] the indicia of being lawful." *Pena–Flores*, 2000 UT App 323 at ¶ 16, 14 P.3d 698.

¶ 14 Pena–Flores contends, however, that this "scope of authority" reading of the "seeking to effect a lawful arrest or detention" language of the statute sanctions unreasonable searches and seizures prohibited by the Fourth Amendment. We disagree. The plain language of section 76–8–305 does not

sanction an illegal arrest or detention as Pena–Flores claims. Rather, it provides for an orderly resolution of disputes about the lawfulness of an arrest or detention. As we previously held in *Gardiner*, if a person has an objection to the legality of an arrest or detention, "[t]he fine question of legality must be determined in subsequent judicial proceedings, not in the street." *Gardiner*, 814 P.2d at 574; *see also State v. Bradshaw*, 541 P.2d 800, 805 (Utah 1975) (Ellett, J., dissenting) (stating that the statute "merely transfers the right of redress ... to the orderly procedure of a court trial instead of a brawl in the streets").

¶ 15 We also recognized in *Gardiner* that a citizen resorting to self-help when questioning the legality of an arrest or detention is a long-outdated concept. "An arrestee now has the 'benefits of liberal bonding policies, appointed counsel in the case of indigency, and the opportunity to be taken before a magistrate for immediate arraignment and preliminary hearing.' " *Gardiner*, 814 P.2d at 572 (quoting *State v. Richardson*, 95 Idaho 446, 511 P.2d 263, 267 (1973)). The statute does not disregard the Fourth Amendment, but reflects the legislature's legitimate preference for orderly judicial settlement of disputes over disorderly street brawls. "Indeed, self-help not infrequently causes far graver consequences for both the officer and the suspect than does the [possibly] unlawful arrest itself." *People v. Curtis*, 70 Cal.2d 347, 74 Cal.Rptr. 713, 450 P.2d 33, 36 (1969) (en banc).

¶ 16 Finally, this plain language reading of section 76–8–305 is in harmony with the reasonable and rational public policy considerations we also acknowledged in *Gardiner*. " 'The societal interest in the orderly settlement of disputes between citizens and their government outweighs any individual interest in resisting a questionable [arrest or detention]. One can reasonably be asked to submit peaceably and to take recourse in ...

---

1. Chief Justice Durham's discussion in section II of her dissent concerning Pena–Flores' being convicted under subsection (2) of the interfering statute is entirely irrelevant to the facts of this case. *See infra* ¶¶ 27–33. The record is abundantly clear that Pena–Flores was convicted of

violating subsection (3) of section 76–8–305 of the Utah Code. In pronouncing its verdict, the trial court stated that "[t]he focus here is ... on number three of the statute, the defendant's refusal to refrain from performing any act that will impede the arrest or detention."

legal remedies.' " *Gardiner*, 814 P.2d at 572 (quoting *State v. Doe*, 92 N.M. 100, 583 P.2d 464, 466–67 (1978)).

¶ 17 Accordingly, we find that the "seeking to effect a lawful detention or arrest" language of the statute does not sanction unreasonable searches and seizures prohibited by the Fourth Amendment.[2]

## CONCLUSION

¶ 18 For the reasons set forth in this opinion, we affirm the decision of the court of appeals. We also hold that the "seeking to effect a lawful detention or arrest" language of Utah Code Ann. § 76-8-305 comports with the Fourth Amendment prohibition against unreasonable searches and seizures.

¶ 19 Associate Chief Justice DURRANT, Justice HOWE, and Justice WILKINS concur in Justice RUSSON's opinion.

DURHAM, Chief Justice, dissenting:

¶ 20 The court of appeals held that, under Utah Code section 76-8-305, a person may not interfere with an arrest or detention, regardless of whether the police action is lawful or not, so long as the officer is acting within the scope of his or her authority and the acts have the indicia of authority. *Pena–Flores*, 2000 UT App 323, ¶ 11, 14 P.3d 698. The majority today affirms that decision. This holding rests upon a solid policy consideration: the law should not encourage citizens to second-guess police authority or to interfere with police investigations. Disputes over the lawfulness of police actions are better resolved in the courts than in the streets.

¶ 21 This policy, however, must be weighed against the limits the statute places on the fundamental rights and freedoms of individual citizens. *See Terry v. Ohio*, 392 U.S. 1, 24–25, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). No matter how important it is to ensure safety and clarity on the streets, a statute that makes unlawful a substantial amount of constitutionally protected conduct or that fails to properly inform the citizenry of the prohibited conduct violates important constitutional rights. "The freedom of individuals to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Houston v. Hill*, 482 U.S. 451, 462–63, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). In this day of terrorism and youth violence, of unknown enemies and intractable problems, our attempts to protect

---

2. Chief Justice Durham errs in section III of her dissent wherein she asserts that Pena–Flores' rights to free speech were somehow compromised by his arrest. *See infra* ¶¶ 37–40. Certain speech is prohibited when such speech "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Pena–Flores was inciting "imminent lawless action" when he told detainees, under the circumstances then existing, that they did not have to cooperate with police seeking to effect a lawful detention. He was also likely to "incite such [imminent lawless] action" when the bystanders became agitated. As a result, the officers at the scene exercised their legal discretion. They took action to defuse what was becoming an escalating situation that was impeding the detention of known gang members, and arrested Pena–Flores for interfering. *See Davis v. United States*, 512 U.S. 452, 461, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (recognizing that in the "real world" of police operations, officers must make instantaneous and difficult judgment calls).

Chief Justice Durham also errs in asserting that subsection (3) of the interfering statute somehow reaches a substantial amount of protected speech and is therefore unconstitutionally overbroad. The statute does not say that *all acts* are prohibited, but rather *all acts that impede* officers seeking to effect a lawful arrest or detention. The term "impede" in the statute places a narrow limitation as to when a person is interfering with arresting officers. *Black's Law Dictionary* 753 (6th ed.1990) defines "impede" as "to obstruct; hinder; check; delay." The statute reaches a person's actions only when those actions interfere with a lawful arrest or detention by impeding the peace officers involved. The statute does not say that citizens cannot express their opinion about the unlawfulness of an arrest or detention. It does say that they cannot interfere by such expression to the point of impeding. If a person has an objection to the legality of an arrest or detention and that objection interferes by impeding police officers, "the fine question of legality [of the underlying arrest or detention] must be determined in subsequent judicial proceedings, not in the street." *Gardiner*, 814 P.2d at 574; *see also Bradshaw*, 541 P.2d at 805 (Ellett, J., dissenting) (stating that the statute "merely transfers the right of redress … to the orderly procedure of a court trial instead of a brawl in the streets").

ourselves as a society must be carefully tailored so that they do not violate the constitutional principles that make our way of life possible. Thus, in reviewing the decision of the court of appeals, I believe we must weigh the legitimate purposes of the statute against the burden it places on the constitutional rights of the individual.

¶ 22 Defendant claims that the court of appeals erroneously interpreted the plain language of Utah Code section 76–8–305, that this interpretation renders the statute unconstitutional, and that under a proper interpretation of the statute his conviction should be overturned. The State counters that the court of appeals correctly held that the statute applies to both lawful and unlawful arrests and detentions. Considering individually each section of the statute that applies to defendant's conviction, I would hold that a person may be convicted under section two of the statute only where the person refuses a necessary, lawful order that does not encroach upon the person's constitutional rights, or where the person resists by the use of force. I also believe that section three of the statute is unconstitutionally overbroad.

## I. THE CONTEXT OF THE STATUTE: "SEEKING TO EFFECT A LAWFUL ARREST"

¶ 23 Utah Code section 76–8–305 provides the following:

A person is guilty of a class B misdemeanor if he has knowledge, or by the exercise of reasonable care should have knowledge, that a peace officer is seeking to effect a lawful arrest or detention of that person or another and interferes with the arrest or detention by:

(1) use of force or any weapon;

(2) the arrested person's refusal to perform any act required by lawful order:

(a) necessary to effect the arrest or detention; and

(b) made by a peace officer involved in the arrest or detention; or

(3) the arrested person's or another person's refusal to refrain from performing any act that would impede the arrest or detention.

Utah Code Ann. § 76–8–305 (2001). The court of appeals held that the introductory language, "seeking to effect a lawful arrest," does not require that the underlying arrest or detention be legally sound. *Pena–Flores*, 2000 UT App 323, ¶¶ 16–17, 14 P.3d 698. It held that the term "lawful" in the introduction of the statute does not incorporate the constitutional standards that require detentions to be based upon "reasonable suspicion" and arrests upon "probable cause." *Id.* at ¶ 11. Rather, the court of appeals held that "[s]o long as a police officer is acting within the scope of his or her authority and the detention or arrest has the indicia of being lawful, a person can be guilty of interfering with a peace officer even when the arrest or detention is later determined to be unlawful." *Id.*

¶ 24 Defendant asserts that the court of appeals' interpretation of the statute renders it unconstitutional because, under that interpretation, the statute "punishes a citizen for pointing out that police are effecting an unlawful detention ... [and] permits and authorizes the seizure of citizens without reasonable suspicion of criminal activity and without lawful basis for the detention." He claims the statute violates the federal due process clause by allowing the arrest or detention of persons without probable cause or reasonable suspicion. He argues that the statute allows police to circumvent the requirements of due process; for example, a police officer who lacks probable cause to arrest a citizen for one crime might evoke an uncooperative response from the citizen and then arrest that person for interference, thereby effecting an arrest without probable cause for the first crime.

¶ 25 Defendant correctly notes that in order to detain a citizen an officer must have reasonable suspicion that the person has committed, is committing, or is about to commit a crime. *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir.2000) (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). In order to arrest a person, the police officer must have probable cause to believe a crime has been committed. *Id.* (citing *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995)). The court of appeals' and

this court's interpretation of the statute, however, does not necessarily do away with these standards. If a police officer lacks probable cause to arrest a person for one crime, the officer may still arrest that person for a second crime if the officer has probable cause to believe the person committed the second crime. Thus, assuming the officer has probable cause to believe the citizen committed the second crime, the only way in which the arrest would violate the citizen's constitutional rights is if the second crime— i.e., interference with a peace officer—prohibits a substantial amount of constitutionally protected conduct.[1] If, however, the statute is constitutionally sound, the police are free to base an arrest on probable cause that the statute has been violated, regardless of whether they have probable cause to believe the person committed another crime as well. *See State v. Trane*, 2002 UT 97, ¶ 31, 57 P.3d 1052 (holding that search incident to arrest was lawful where police had probable cause to believe the interference statute was violated).

¶ 26 I believe, therefore, that we should look to the statute to determine whether it prohibits a substantial amount of constitutionally protected conduct. Since it has not been claimed that defendant interfered by the use of force or a weapon, I focus my review upon sections two and three of the statute, which prohibit interference but make no reference to the use of force. I consider the interpretation of these two sections in light of the interpretations suggested by de-

fendant and the State, determine whether each section is constitutionally sound, and, if the section is constitutional, determine whether defendant's actions could properly be determined to have violated that section of the statute.

## II. SECTION TWO OF THE STATUTE: "REFUSAL TO PERFORM ANY ACT"

¶ 27 We must presume that Pena–Flores was convicted under the statute for at least one of two actions in defiance of the police officer: first, he refused to stop informing the detainees that they need not cooperate with the police; second, after being detained himself, defendant refused to supply the officer with identification. This second refusal ostensibly falls under section two of the statute, which prohibits interference by:

the arrested person's refusal to perform any act required by lawful order:

(a)necessary to effect the arrest or detention; and

(b)made by a peace officer involved in the arrest or detention.

Utah Code Ann. § 76–8–305(2) (2001).[2]

¶ 28 In interpreting a statute we will, if possible, construe the language so that the statute is constitutional. *State v. Morrison*, 2001 UT 73, ¶ 12, 31 P.3d 547. We are, however, limited in doing so: we will not interpret the language so that it results in an application that is " 'unreasonably confused, inoperable, [or] in blatant contradiction of the

1. It is true that a broad reading of the statute may make it easier for police to arrest persons despite a lack of probable cause for the initial crime. This may permit a situation in which "whenever any barrier is placed in the path of process and/or arrest," the police simply fall back upon an interference charge. *State v. Offen*, 96 Misc.2d 147, 408 N.Y.S.2d 914, 916 (N.Y. 1978). The effect of this statute may be "to divert attention from the initial alleged criminality or transgression" and redirect it to the way in which the person reacted to the arrest or detention. *Id.; see also Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 880 (9th Cir.2002) (stating that such statutes " 'bootstrap the authority to arrest on less than probable cause' " (quoting *Lawson v. Kolender*, 658 F.2d 1362, 1366–67 (9th Cir.1981))). In interpreting a statute, however, we do not consider the merits of the legislation, but only determine from the plain language of

the statute whether it passes constitutional muster. *See Ryan v. Gold Cross Servs.*, 903 P.2d 423, 426 (Utah 1995).

2. Although this section only prohibits "the arrested person" from defying police orders, I believe that the interfering person need not have already been arrested to fall within the scope of section two. To read the statute otherwise would mean that only persons in custody need to obey lawful police orders. Such an interpretation is unduly confusing and does not comport with the apparent purpose of the statute, i.e., to encourage compliance with lawful police orders. I would conclude that the terms "arrested person" refer to any person who is ultimately arrested for violating the statute, regardless of whether he or she is already under arrest at the time of the interference.

express purpose of the statute.' " *O'Keefe v. Utah State Ret. Bd.*, 956 P.2d 279, 281 (Utah 1998) (quoting *Morton Int'l, Inc. v. Auditing Div.*, 814 P.2d 581, 590 (Utah 1991)). Further, "we will not 'infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and [we have] no power to rewrite the statute to conform to an intention not expressed.' " *Associated Gen. Contrs. v. Bd. of Oil, Gas & Mining*, 2001 UT 112, ¶ 30, 38 P.3d 291 (quoting *Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994)); *see also Arredondo v. Avis Rent A Car Sys., Inc.*, 2001 UT 29, ¶ 12, 24 P.3d 928.

¶ 29 The court of appeals held that this section, and indeed the whole statute, does not require that the underlying arrest or detention be lawful. The court of appeals and the majority of this court do not address, however, the statutory language of section two requiring that the officer's *order* be lawful. The term "lawful" occurs in both the introduction of the statute and section two. Unlike the introduction, which refers to "seeking to effect" a lawful detention, section two in no way qualifies the term "lawful." The plain language of section two defines interference as refusal to comply with an order that is (1) "lawful," (2) "necessary to effect the arrest or detention," and (3) "made by a peace officer involved in the arrest or detention." If we were to interpret the statute as not requiring that the officer's order be legally justified, the term "lawful" would be superfluous and, indeed, contradictory. I would conclude that, aside from whether the underlying arrest or detention is lawful, a person may not be convicted under section two of the statute if the police officer's *order* was not in fact lawful.

¶ 30 The fact that an officer's order is lawful, however, does not necessarily mean that the citizen has no right to refuse the order:

There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as [where there is reasonable suspicion], it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obligated to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation.

*Terry v. Ohio*, 392 U.S. 1, 34, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (White, J., concurring). Certainly a person does not abandon his or her constitutional right to remain silent, request an attorney, or peaceably refuse consent to a search merely because an officer lawfully requests the contrary. I would therefore consider whether section two of the statute violates the citizen's constitutional right to refuse to comply with an officer's order.

¶ 31 The plain language of the terms, "lawful order," could be interpreted in two different ways. "Lawful order" could be interpreted to mean (1) any request an officer is legally permitted to make, regardless of whether the arrested person has a constitutional right to refuse to comply with the request, or (2) only those demands an officer is legally permitted to make that a person does not have a constitutional right to refuse. When the plain language of a statute permits two different interpretations, only one of which would render the statute constitutional, we choose the interpretation that favors constitutionality. Here, only the second interpretation maintains the arrested person's constitutional rights.[3] Thus, I believe that section two prohibits noncompliance with a lawful order that the person has no constitutional right to refuse.

¶ 32 I next consider whether this section, in combination with the introductory language of the statute, is unconstitutional. Defendant argues that the statute violates

---

3. In addition, a narrow interpretation is inferentially supported by the context of the statute. The statute itself limits the term "lawful order" by requiring that the order also be "necessary to effect the arrest or detention" and "made by a peace officer involved in the arrest or detention." Utah Code Ann. § 76–8–305(2) (2001).

due process if it does not require that the underlying arrest or detention be lawful. I disagree. By requiring only that a person comply with "lawful" police orders, this section maintains the citizen's right to refuse to comply with orders that infringe upon the citizen's constitutional rights. Where the officer's order is lawful, but the arrest or detention is ultimately deemed unlawful, the statute does not leave the arrested person without a remedy. In such cases the wrongly detained or arrested person is free to assert his or her constitutional rights and to later seek redress in court for the wrongful arrest or detention. Finally, this interpretation maintains clarity and encourages peaceful interactions between citizens and police.[4] Under this rule, a citizen need not consider what is in the mind of the officer—i.e., whether the officer has reasonable suspicion or probable cause—but may base his or her actions upon more objective criteria—i.e., firmly-rooted constitutional rights and the outward indicia of authority of the officer.[5]

¶ 33 Having determined that this section prohibits noncompliance with a lawful order that the person has no constitutional right to refuse, and that the underlying arrest or detention need not be lawful, I next consider whether defendant violated this section by refusing the officer's order to supply identification. The United States Supreme Court has never determined whether a citizen who is being lawfully detained or arrested has a constitutional right to refuse to give the officer identification. See Oliver v. Woods, 209 F.3d 1179, 1190 (10th Cir.2000) (citing Kolender v. Lawson, 461 U.S. 352, 361 n. 10, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). Some courts have determined that there is such a right, while others have ruled to the contrary. See 66 A.L.R.5th 397, § 16; see also Martinelli v. Beaumont, 820 F.2d 1491, 1494 (9th Cir.1987). I would not reach this question today, however, because I find that the officer's order—whether lawful or not[6]—was not necessary to effect an arrest or detention. Regardless of defendant's refusal to hand over his identification, the officer was free to—and, in fact, did—complete the arrest of defendant. See, e.g., People v. Quiroga, 16 Cal.App.4th 961, 20 Cal.Rptr.2d 446, 449 (1993) (stating that refusal to give identification did not delay or obstruct arrest because identification is not necessary until booking); State v. Hamilton, 120 Wis.2d 532, 356 N.W.2d 169, 174 (1984) (holding officer was not "obstructed" in performing his duties by defendant's refusal to supply identification). Thus, even presuming that the officer's request was a "lawful order," defendant's refusal to comply did not violate section two of the statute because the order was not "necessary to effect the arrest or detention." I believe that section two therefore provides no basis upon which to uphold defendant's conviction.

### III. SECTION THREE OF THE STATUTE: "REFUSAL TO REFRAIN FROM PERFORMING ANY ACT"

¶ 34 Defendant's refusal to cease telling the alleged gang members that they need not

---

4. This interpretation also best comports with the plain language of the statute. Determining that the statute applies only to lawful arrests and detentions would leave the term "seeking to effect" in the introductory language without meaning.

5. I note that this ruling would not give a citizen the right to physically resist an arrest or detention, regardless of whether the arrest or detention is lawful. In State v. Gardiner, 814 P.2d 568 (Utah 1991), we held that the common-law right to forcefully resist an arrest has been repudiated in Utah. Id. at 573. Similarly, in State v. Trane, 2002 UT 97, 57 P.3d 1052, we held that an officer had probable cause to arrest a person for violating this section when the person "physically and forcefully" resisted an arrest or detention that may or may not have been lawful. Id. at ¶ 36 n. 4.

6. The United States Supreme Court has stated that a person may not be arrested merely for refusing to provide identification where the officers did not have reasonable suspicion to support the initial detention. Brown v. Texas, 443 U.S. 47, 52–53, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Consistent with this ruling, Utah Code section 77–7–15 permits a police officer to demand identification only if the officer has a reasonable suspicion that the person has committed, is committing, or is attempting to commit an offense. Utah Code Ann. § 77–7–15 (2001). The trial court did not determine whether the officer in this case had reasonable suspicion to detain Pena–Flores, and I would not reach that question here.

cooperate with the police could reasonably have been determined a violation of section three of the statute. That section prohibits "the arrested person's or another person's refusal to refrain from performing any act that would impede the arrest or detention." Utah Code Ann. § 76–8–305(3) (2001).

¶ 35 The court of appeals held, and the majority agrees, that this section, like the other sections of the statute, does not require that the underlying arrest or detention be lawful. Defendant argues that the court of appeals' interpretation renders the statute unconstitutional and that we must read the statute to impose a requirement that the underlying arrest or detention be lawful. I first consider whether this section of the statute suffers from constitutional infirmities. Next, I consider whether those infirmities can be resolved by the interpretation suggested by defendant.

¶ 36 In considering whether a statute suffers from overbreadth, " 'a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.' " *Houston v. Hill,* 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (quoting *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). In making this determination, "[c]riminal statutes must be scrutinized with particular care; those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.* at 459, 107 S.Ct. 2502 (citations omitted).

¶ 37 Defendant asserts that the statute "punishes a citizen for pointing out that police are effecting an unlawful detention." Although not explicitly styled as such, defendant's claim rests primarily upon the First Amendment. "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). A significant amount of verbal criticism and challenge to police officers is pro-

tected by the First Amendment. *Houston,* 482 U.S. at 461, 107 S.Ct. 2502.

> [A person] cannot be arrested for his words unless they are somehow stripped of their First Amendment protection. While the First Amendment does not protect threats, in order for speech to qualify as illegal advocacy of violence, without the protection of the First Amendment, the bar is high. Only "where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action" can this speech be proscribed.

*Resek v. Huntington Beach,* No. 01–56029, 2002 WL 1418270, at *1, 2002 U.S.App. LEXIS 13392, at *5 (9th Cir. July 1, 2002) (citation omitted) (quoting *Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969)).

¶ 38 Section three of the statute is considerably broader than section two. Unlike section two, section three does not require that the refusal be of a "lawful" order or that refraining be "necessary" to effect the arrest or detention. Rather, the statute prohibits refusal to refrain from "any act" that would "impede" an arrest or detention. The term "impede" is in no way defined, but carries the broad common meaning of "to slow down or cause problems for the advancement or completion of (something); get in the way of (something)." *Cambridge International Dictionary.* The term "impede" in no way limits the statute to advocacy of violence or other behavior that might threaten the safety of the officers, *cf. State v. Vasquez,* 465 Mich. 83, 631 N.W.2d 711, 716 (2001) (concluding, based on surrounding terms, that "obstruct" only refers to threatened or actual physical interference), nor does it limit the statute to affirmative acts intended to disrupt police, *State v. Weathington,* 82 Ill.2d 183, 44 Ill. Dec. 496, 411 N.E.2d 862, 863 (1980) (citation omitted) (stating that criminal obstruction requires "some physical act or exertion"). The statute therefore puts at risk a substantial amount of constitutionally protected speech.[7]

---

**7.** The broad language of the statute reaches not only First Amendment rights but other constitutional rights as well. It is not difficult to imagine situations in which a citizen could be convicted under this section of the statute for peacefully and lawfully asserting his or her constitutional

¶ 39 In the present case there is no indication that defendant did anything more than criticize the police officers and offer advice to those being detained. Whether his criticism was welcome or his advice correct is immaterial. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Houston*, 482 U.S. at 461, 107 S.Ct. 2502. Because section three of the statute prohibits a substantial amount of constitutionally protected speech, and because the statute fails to limit police authority to stop protected conduct, I believe that this section is overbroad.

¶ 40 Having determined, based on the plain language of the statute, that section three is overbroad, I next consider whether the interpretation offered by defendant can save this section from its constitutional infirmities. Defendant argues that we should read the introductory language of the statute to require that the underlying arrest or detention be lawful. As I discussed previously, this reading would encourage disorder on the streets and does not comport with the plain language of the statute. Even if I were to accept this interpretation, however, this section of the statute would remain overbroad. The statute applies to both the person being arrested or detained and any other person who might impede the arrest or detention. A person's freedom of speech cannot rise and fall based upon whether the police have probable cause to arrest another person. Furthermore, where the statute is applied to the person being arrested or detained, this section creates an unbounded restriction on the accused's First and Fifth Amendment rights by prohibiting any conduct that might impede the arrest or detention. Thus, even if I could read the statute to require that the underlying arrest or detention be lawful, section three would still prohibit a substantial amount of constitutionally protected conduct. Therefore, I believe that section three is overbroad and should not stand. I would reverse the court of appeals.

rights: an attorney refuses a misguided police order to be quiet and continues to advise his client of his legal rights; a woman hands out pamphlets on the right to remain silent and, as a result, police have difficulty procuring a confession from a person who has read the pamphlet; victims of police brutality refuse to stop picketing on the sidewalk in front of the police station when police attempt to detain and identify them; an employer refuses to immediately stop production at his factory so that his employee may leave the premises and be served with an arrest warrant, *see State v. Ludlow*, 28 Utah 2d 434, 503 P.2d 1210 (1972) (affirming quash of information where employer refused to immediately release employee whom deputy wished to serve with a small claims court order); a priest informs a criminal that he is absolved of his crimes, and, as a result, the criminal determines not to confess to police; being pursued on a charge of littering, a person goes into his store and refuses to unlock his door for police, who have neither an arrest warrant nor a search warrant, *see State v. Offen*, 96 Misc.2d 147, 408 N.Y.S.2d 914, 916 (Crim.Ct. 1978) (dismissing obstruction charge under similar facts for failure to identify a criminal act in the information); a detainee—or even a witness—asks the officer for his name and badge number before answering questions, *cf. People v. Krum*, 374 Mich. 356, 132 N.W.2d 69, 72 (1965) (affirming obstruction conviction where defendant interrupted officer to demand his name and badge number while the officer was inspecting the cars of other people).