*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2014 UT 61**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner,*

*v.*

ROBERT COLLINS,
*Respondent.*

No. 20130384
December 30, 2014

Third District, Salt Lake
The Honorable Judith S.H. Atherton
No. 051905843

Attorneys:

Samuel P. Newton, Kalispell, MT, for petitioner

Sean D. Reyes, Att'y Gen., John J. Nielsen, Asst. Att'y Gen.,
Salt Lake City, for respondent

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
JUSTICE DURHAM, JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING filed a dissenting opinion.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1    In this case we are asked to clarify the nature of a defendant's burden of proof in seeking reinstatement of the right to appeal. Here, defendant Robert Collins failed to appeal his convictions within the thirty-day deadline for filing a notice of appeal. Approximately two years after the deadline, he filed a motion for reinstatement of his right to appeal and argued that our decision in *Manning v. State*[1] and rule 4(f) of the Utah Rules of

---

[1] 2005 UT 61, 122 P.3d 628.

Appellate Procedure required the court to reinstate his appeal because neither his counsel nor the trial court informed him of the relevant thirty-day deadline. The trial court denied his motion for reinstatement. But the Utah Court of Appeals reversed and held that Mr. Collins was deprived of his right to appeal because he was not properly informed of the thirty-day filing deadline.

¶2    We reverse the court of appeals' decision because the court erred by declining to apply harmless error analysis. Claims for reinstatement of the right to appeal are subject to harmless error review. Consequently, where a defendant seeks reinstatement on the basis that he was not properly advised of the right to appeal, as is the case here, he cannot rely solely on that fact. Rather, he must show by a preponderance of the evidence that he was not properly advised of the right to appeal *and* that had he been properly advised he would have filed an appeal.

¶3    Accordingly, we remand the case to the trial court to consider whether Mr. Collins has met his burden of showing that he would have filed an appeal had he known of the thirty-day deadline. The trial court may exercise its discretion in deciding whether to hold further hearings on the issue or, instead, to rely on the existing record.

**Background**

¶4    In October 2006, a jury found Mr. Collins guilty of one count of murder and two counts of aggravated robbery. Mr. Collins's counsel, Clayton Simms, then consulted with Mr. Collins in his holding cell and told him that he thought there were some "appealable issues." Mr. Simms also encouraged Mr. Collins to appeal the jury verdict. Mr. Collins expressed dissatisfaction with the guilty verdict but responded to Mr. Simms's suggestion of filing an appeal by saying, "I don't want to appeal. I accept that."

¶5    The trial court sentenced Mr. Collins in January 2007 to three consecutive terms of ten years to life in prison. At that time, the trial court failed to comply with rule 22(c)(1) of the Utah Rules of Criminal Procedure by not informing Mr. Collins of his right to appeal and of the thirty-day deadline for filing a notice of appeal imposed by rule 4(a) of the Utah Rules of Appellate Procedure.[2] But

---

[2] Rule 22(c)(1) of the Utah Rules of Criminal Procedure requires, in part, that "[f]ollowing imposition of sentence, the court shall advise the defendant of defendant's right to appeal and the time within which any appeal shall be filed."

immediately after sentencing, Mr. Simms again advised Mr. Collins that he could file an appeal and encouraged him to do so. Mr. Collins maintained that he did not want to appeal. Mr. Simms responded by telling Mr. Collins to let him know within two weeks if he changed his mind. Mr. Collins did not contact Mr. Simms within the next two weeks.

¶6 Over two years later, on January 27, 2009, Mr. Collins sent the trial court a letter claiming that "[Mr.] Simms informed me he would file an appeal to this conviction." Mr. Collins stated that "since it's been so long I asked someone to call the Utah Court of Appeals and was informed my attorney never filed it." The trial court sent Mr. Simms a copy of the letter. Mr. Simms later testified that the letter was the first time Mr. Collins ever indicated he wanted to appeal. Mr. Simms wrote back to Mr. Collins and stated that "[t]here is no appeal. You didn't request one."

¶7 After being appointed new counsel, Mr. Collins filed a motion seeking reinstatement of his right to appeal pursuant to rule 4(f) of the Utah Rules of Appellate Procedure and our decision in *Manning v. State*.[3] He supported his motion on two alternative grounds. First, he argued that Mr. Simms failed to file an appeal after being expressly told to do so. Second, he argued that neither the trial court nor Mr. Simms properly advised him of the thirty-day deadline for filing a notice of appeal.

¶8 The trial court held a hearing on Mr. Collins's reinstatement motion, eliciting testimony from four witnesses, including: (1) Mr. Simms, (2) Elissa Duckworth, a systems administrator over the inmate telephone system at the prison, (3) Sylvia Collins, Mr. Collins's sister, and (4) Mr. Collins.

¶9 Mr. Simms recounted that he twice asked Mr. Collins whether he wanted to appeal and each time he said no. He testified that he told Mr. Collins that he needed to know within two weeks if Mr. Collins changed his mind and wanted to file an appeal. He acknowledged that this advice was not technically correct, but noted that it is his standard practice to tell clients they need to let him know within two weeks whether they want to appeal to avoid having them "call on the 30th day and ask for an appeal."

¶10 Ms. Duckworth's testimony focused on Mr. Collins's prison telephone log. She testified that the call log showed that Mr. Collins

---

[3] 2005 UT 61, 122 P.3d 628.

made 385 phone calls between January 2007 and January 2008. None of those calls was to Mr. Simms.

¶11 Next, Ms. Collins testified that she received numerous letters from Mr. Collins while he was in prison and believed, based on those letters, that his case would be appealed.

¶12 Mr. Collins testified last. He testified that he asked Mr. Simms to file an appeal both after receiving the jury's verdict and soon after sentencing. Somewhat inconsistently, however, he also stated that he thought Mr. Simms would automatically file an appeal. His testimony is also unclear regarding when he learned that his convictions had not been appealed. He suggested that he became concerned about his appeal sometime during May 2007 after he called the Salt Lake Legal Defender Association's office seeking to talk to Mr. Simms about the appeal but was told that Mr. Simms did not work at that office. But he also suggested that he first became concerned about the status of his appeal approximately eight months after sentencing, in September 2007.

¶13 Mr. Collins further testified that he had no knowledge of the thirty-day deadline for filing an appeal. According to him, he only became aware of the thirty-day deadline for filing an appeal in approximately October 2008, after talking to another inmate. He asserted that had he known of the deadline, he "would have been on it right away, writing letters to whoever [he] had to or making phone calls or whatever." When asked specifically if he would have done anything differently had he known of the thirty-day deadline, Mr. Collins responded that he "would have contacted Mr. Simms and made sure he filed [the] appeal like [he] thought [Mr. Simms] did."

¶14 When questioned on direct examination about why he waited almost two years after his convictions to begin seeking updates on the status of his appeal from the court, Mr. Collins explained that he "heard that appeals take awhile" and "didn't know . . . if it was still being processed or if it ever even got filed." The State cross-examined Mr. Collins regarding his claim that he attempted to call the Salt Lake Legal Defender Association and Mr. Simms multiple times to check on the status of his appeal. When confronted with the fact that the prison's phone log did not show that he ever attempted to call the Salt Lake Legal Defender Association or Mr. Simms, Mr. Collins testified that he called from another inmate's phone account but did not know the inmate's name.

¶15 The trial court denied Mr. Collins's motion for reinstatement and stated that it found Mr. Simms's testimony "to be more credible

than [Mr.] Collins' testimony."[4] In assessing whether Mr. Collins was denied his right to appeal, the court reasoned as follows:

> In weighing the testimony of the witnesses, this Court concludes that defendant's counsel did apprise defendant of his right to appeal, though he did not specifically tell defendant that he must do so within 30 days. Mr. Simms told the defendant to contact him within 14 days if he wished to file an appeal, well within the 30 day time period permitted. The Court further concludes that the defendant did not diligently attempt to appeal within the statutory time frame. The Court is particularly considering the fact that defendant's letter to the Court was sent more than two years after the time of sentencing. The Court did not properly apprise defendant of his right to appeal as required by Rule 22(c)(1), Utah Rules of Criminal Procedure. Although this Court should have done so, that does not entitle him to have the appeal reinstated because his attorney properly advised him of that right.

¶16 The court of appeals reversed the trial court, concluding "that properly advising a defendant of his right to appeal includes advising him of the time within which an appeal must be filed."[5] Because neither the trial court nor Mr. Collins's counsel informed him of the thirty-day deadline, the court of appeals held that Mr. Collins "has a valid claim for reinstatement of [the] right [to appeal]."[6] In so holding, the court rejected the State's argument that it was Mr. Collins's burden to show "that but for his lack of

---

[4] The trial court did not specify which parts of Mr. Collins's testimony it found less credible than Mr. Simms's testimony. Accordingly, there is no specific credibility finding concerning Mr. Collins's statements that if he had known of the thirty-day deadline, he "would have been on it right away, writing letters to whoever I had to or making phone calls or whatever," and "would have contacted Mr. Simms and made sure he filed [the] appeal like [he] thought [Mr. Simms] did."

[5] *State v. Collins*, 2013 UT App 42, ¶ 9, 298 P.3d 70.

[6] *Id.* (internal quotation marks omitted).

Opinion of the Court

information he would have filed an appeal."[7] Instead, the court stated as follows:

> [W]e hold that a defendant who has not been properly informed by either court or counsel of his appeal rights, including the time within which the notice of appeal must be filed, is entitled to reinstatement of the appeal time under *Manning*. Such a defendant is not required to show in addition that, had he been informed of his rights, he would have appealed.[8]

¶17 The State petitioned this court for writ of certiorari, which we granted. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

**Standard of Review**

¶18 On certiorari, "we review the decision of the court of appeals and not that of the trial court."[9] "[W]e review the decision of the court of appeals for correctness" and "may affirm the court of appeals' decision on any ground supported in the record."[10]

**Analysis**

¶19 Mr. Collins's claim for reinstatement of his right to appeal relies on the third of three scenarios in *Manning v. State* that we identified as unconstitutional deprivations of a criminal defendant's right to appeal—the scenario where "the court or the defendant's attorney failed to properly advise defendant of the right to appeal."[11] The court of appeals held that Mr. Collins was entitled to reinstatement of time for filing an appeal under this scenario and

---

[7] *Id.* ¶ 13.

[8] *Id.* ¶ 15.

[9] *American Fork City v. Pena-Flores*, 2002 UT 131, ¶ 7, 63 P.3d 675 (internal quotation marks omitted).

[10] *Id.* (internal quotation marks omitted).

[11] 2005 UT 61, ¶ 31, 122 P.3d 628. We note that in his argument before the trial court, Mr. Collins also based his claim for reinstatement on the ground that Mr. Simms failed to file an appeal after being expressly told to do so. But Mr. Collins did not preserve a challenge to the trial court's findings of fact on this point nor has he raised this argument before us. *See State v. Collins*, 2013 UT App 42, ¶ 3 n.1, 298 P.3d 70. Accordingly, in this opinion we do not address his claim for restatement on this basis.

rejected the State's argument "that *Manning* error is subject to review for harmless error or prejudice."[12]

¶20 We reverse because the court of appeals erred in not reviewing Mr. Collins's claim for reinstatement under a harmless error analysis. Both *Manning* and rule 4(f) of the Utah Rules of Appellate Procedure require that a defendant show that he has been "deprived" of the right to appeal, which implicitly requires the defendant to show that he would have appealed had he been properly informed. Moreover, the general rule is that all errors are reviewed for harmlessness, and Mr. Collins has not shown that a court's failure to comply with rule 22(c)(1) of the Utah Rules of Criminal Procedure falls within the structural error exception to this general rule. Ultimately, we remand the case to the trial court to determine whether Mr. Collins has shown by a preponderance of the evidence that he would have appealed had he been properly informed of his right to appeal.

## I. To Have a Valid Claim for Reinstatement of the Right to Appeal Under Scenario Three of *Manning*, a Criminal Defendant Must Show by a Preponderance of the Evidence That He Was Not Properly Advised of the Right to Appeal and That He Would Have Appealed Had He Been Properly Informed

¶21 Under the Utah Constitution, criminal defendants have "the right to appeal in all cases."[13] But to exercise this right, defendants must properly invoke the appellate court's jurisdiction. "Appellate courts do not enjoy unlimited power to review the actions of trial courts" and "cannot conjure jurisdiction."[14]

¶22 One procedural prerequisite to invoking appellate court jurisdiction is the requirement that an aggrieved party file "a notice of appeal with the clerk of the trial court."[15] This must be done "within 30 days after the date of entry of the judgment or order appealed from."[16] This deadline is "jurisdictional in nature,"

---

[12] *Collins*, 2013 UT App 42, ¶ 10.

[13] UTAH CONST. art. I, § 12.

[14] *State v. Lara*, 2005 UT 70, ¶ 10, 124 P.3d 243.

[15] UTAH R. APP. P. 3(a).

[16] *Id.* 4(a).

meaning that an appellate court simply has no power to hear the case if a notice of appeal is untimely.[17]

¶23 There is an exception for criminal defendants, however, to the general rule that requires the timely filing of a notice of appeal. In *Manning v. State*, we concluded that a criminal defendant's constitutional entitlement to the right to appeal required that we "provide a readily accessible and procedurally simple method by which persons improperly denied their right to appeal can promptly exercise this right."[18] We therefore held that "the trial or sentencing court may reinstate the time frame for filing a direct appeal where the defendant can prove . . . that he has been unconstitutionally deprived, through no fault of his own, of his right to appeal."[19] We further outlined three scenarios that would each constitute an unconstitutional deprivation of the right to appeal:

> (1) the defendant asked his or her attorney to file an appeal but the attorney, after agreeing to file, failed to do so; (2) the defendant diligently but futilely attempted to appeal within the statutory time frame without fault on defendant's part; (3) the court or the defendant's attorney failed to properly advise defendant of the right to appeal.[20]

A defendant must "demonstrate by a preponderance of evidence that she qualifies for any of the exceptions listed above."[21]

¶24 *Manning* has limits. *Manning* relief "is not available to a defendant properly informed of his appellate rights who simply let[s] the matter rest, and then claim[s] that he did not waive his right to appeal."[22] Further, because criminal defendants bear the burden to demonstrate they are entitled to *Manning* relief, we begin with the presumption that "criminal defendants who fail to file a [timely] notice of appeal . . . have knowingly and voluntarily waived th[e] right [to appeal]."[23] Thus, we concluded in *Manning* that "in the

---

[17] *Lara*, 2005 UT 70, ¶ 11 (internal quotation marks omitted).

[18] 2005 UT 61, ¶ 26, 122 P.3d 628.

[19] *Id.* ¶ 31.

[20] *Id.* (citations omitted).

[21] *Id.* ¶ 32 (internal quotation marks omitted).

[22] *Id.* ¶ 33 (alterations in original) (internal quotation marks omitted).

[23] *Id.* ¶ 1.

vast majority of cases where a defendant fails to comply with the rule 4(a) thirty-day requirement for filing a timely appeal, . . . the defendant will be held to have waived his right to appeal."[24]

¶25 Here, Mr. Collins relies on the third *Manning* scenario, alleging that he is entitled to reinstatement of his right to appeal because neither the court nor his attorney properly advised him of his right to appeal in that they did not inform him of the time limitations for filing an appeal. Rule 22(c)(1) of the Utah Rules of Criminal Procedure requires that "[f]ollowing imposition of sentence, the court shall advise the defendant of defendant's right to appeal and the time within which any appeal shall be filed." But a court's failure to fully comply with rule 22(c)(1) will not necessarily result in a deprivation of the defendant's right to appeal because the defendant's attorney may independently inform the defendant of the right. To succeed on a claim of reinstatement, then, a defendant must show that "neither the sentencing court nor [the defendant's] attorney informed [the defendant] of his right to appeal."[25]

¶26 In this case, the trial court failed to comply with rule 22(c)(1) by not informing Mr. Collins of the thirty-day deadline for filing an appeal. Mr. Collins's counsel, Mr. Simms, likewise failed to properly advise Mr. Collins of the filing deadline.[26] Moreover, the State has not argued before us that being "properly informed" for purposes of *Manning* and rule 4(f) is somehow different than being properly instructed under rule 22(c)(1). We therefore assume for purposes of this appeal that Mr. Collins was not "properly informed" because the trial court did not comply with rule 22(c)(1) and Mr. Simms did not independently inform Mr. Collins of the applicable deadline.

¶27 But the State argues that the fact that Mr. Collins was not properly informed of his right of appeal does not end the matter. According to the State, Mr. Collins must additionally show "that but for not being informed of the 30-day deadline, he would have changed his mind and filed a timely appeal." The State argues that reviewing reinstatement claims for harmless error is not a new

---

[24] *Id.* ¶ 33.

[25] *Johnson v. State*, 2006 UT 21, ¶ 26, 134 P.3d 1133.

[26] Although Mr. Simms told Mr. Collins that he had fourteen days to change his mind regarding an appeal, he acknowledged that his advice was not "necessarily correct."

requirement, but instead "has been an integral, if implicit, part of the reinstatement rationale from the beginning."

¶28 We agree with the State for two reasons. First, both our reinstatement caselaw and rule 4(f) of the Utah Rules of Appellate Procedure require that a defendant show he has been "deprived" of the right to appeal. And this deprivation requirement implicitly recognizes that reinstatement is appropriate only where the defendant can show that he would have appealed had he been properly informed. In other words, as we stated in *Manning*, a defendant must establish that something outside of his control "prevented [him] in some meaningful way from proceeding."[27] Second, the general rule is that all errors are reviewed for harmlessness. And the exception for structural errors is inapplicable here because the court's failure to advise Mr. Collins of the time limitations for filing an appeal as required by rule 22(c)(1) of the Utah Rules of Criminal Procedure was not an error that "infect[ed] the entire trial process."[28]

¶29 As a result, we hold that a defendant seeking reinstatement under *Manning* and rule 4(f) has the burden of showing by a preponderance of the evidence that any error was prejudicial. This means that defendants relying on the third *Manning* scenario must show: (1) that neither the court nor counsel properly advised them of their right to appeal, and (2) that "but for" this failure they would have filed an appeal.

*A. Both* Manning *and Rule 4(f) Require a Defendant to Show He was "Deprived" of the Right to Appeal, Which Implicitly Requires Him to Show That "But For" the Occurrence of an Error Affecting His Right to Appeal, He Would Have Appealed*

¶30 Both our reinstatement caselaw and rule 4(f) recognize that reinstatement is only appropriate where a defendant is "deprived" of the right to appeal. Implicit in this requirement is the recognition that where a defendant would not have appealed anyway, there is no deprivation of the right to appeal and any error affecting that right would be harmless. Consequently, to show that any error was not harmless, a defendant seeking reinstatement relief under the third *Manning* scenario must show that had he been properly advised, he would have appealed.

---

[27] 2005 UT 61, ¶ 26 (internal quotation marks omitted).

[28] *Neder v. United States*, 527 U.S. 1, 8 (1999) (internal quotation marks omitted).

¶31 *Manning* illustrates this point. There we held that a defendant must show by a preponderance of evidence that he was "*deprived*, through no fault of his own, of his right to appeal."[29] Our use of the term "deprived" was crucial because the word encompasses a narrow range of situations where a defendant would have appealed, but had that right "take[n] away" or was "kep[t] from the possession, enjoyment, or use" of that right.[30] Further, we noted that reinstatement is appropriate only where a defendant is "*prevented* in some meaningful way from proceeding."[31] Implicit in these statements is the recognition that a defendant is not "deprived" of the right to appeal or "prevented" from appealing where the defendant would not have appealed regardless of any error.

¶32 The specific scenarios we outlined in *Manning* as examples of unconstitutional deprivations of the right to appeal are not contrary to this general rule requiring a defendant to show that he was "deprived" of the right to appeal. Indeed, there is an express requirement that a defendant show some harm in the first two scenarios. These scenarios include situations where "(1) the defendant asked his or her attorney to file an appeal but the attorney, after agreeing to file, failed to do so [and] (2) the defendant diligently but futilely attempted to appeal within the statutory time frame without fault on defendant's part."[32] In both scenarios, the defendant takes affirmative steps to appeal and is ultimately harmed because something outside of his control causes the failure to appeal.

¶33 The third scenario is somewhat different in that it does not contain an express requirement of a showing of harm because it concerns a situation where the defendant lacks knowledge of his right to appeal and accordingly takes no action to vindicate that right. But this lack of express language does not override the fact that scenario three, like scenarios one and two, stems from the

---

[29] 2005 UT 61, ¶ 31 (emphasis added).

[30] *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 606 (2002) (defining "deprive" as "1 *obs*: to take away . . . 3: to keep from the possession, enjoyment, or use of something").

[31] *Manning*, 2005 UT 61, ¶ 26 (emphasis added) (internal quotation marks omitted).

[32] *Id.* ¶ 31 (citation omitted).

general rule requiring a defendant to show he was "deprived" of the right to appeal.

¶34 We later addressed *Manning* scenario three in *Johnson v. State*, and again implicitly recognized that claims for reinstatement are subject to harmless error analysis.[33] There we remanded a defendant's case for a hearing on whether he had been denied his right to appeal.[34] In doing so, we noted that "nothing in the record before us indicates whether [the defendant] was *otherwise notified* of his right to appeal."[35] From this statement it follows that had the defendant been "otherwise notified" of his right to appeal, we would have concluded that the failure on the part of the court and counsel to notify him was harmless.

¶35 Following our decision in *Manning*, we adopted rule 4(f) of the Utah Rules of Appellate Procedure to implement our holding in that case.[36] Rule 4(f) requires "a showing that a criminal defendant was *deprived* of the right to appeal."[37] It further provides that "[i]f the trial court finds by a preponderance of the evidence that the defendant has demonstrated that the defendant was *deprived* of the right to appeal, it shall enter an order reinstating the time for appeal."[38] Rule 4(f), like our reinstatement caselaw, focuses on whether a defendant was "deprived" of the right to appeal, which, again, implicitly recognizes that a defendant is not "deprived" of the right to appeal where he would not have appealed regardless of any error.

¶36 Our conclusion that harmless error analysis applies to claims for reinstatement is in accord with the decisions of many other courts. These decisions establish that there are two different ways in which an error affecting the right to appeal is rendered harmless.

¶37 First, many courts have applied harmless error review in situations where the defendant possessed independent knowledge of

---

[33] 2006 UT 21, 134 P.3d 1133.

[34] *Id.* ¶¶ 25–26.

[35] *Id.* ¶ 26 (emphasis added).

[36] UTAH R. APP. P. 4 advisory committee's note ("Subsection (f) was adopted to implement the holding and procedure outlined in *Manning v. State*, 2005 UT 61, 122 P.3d 628.").

[37] UTAH R. APP. P. 4(f) (emphasis added).

[38] *Id.* (emphasis added).

the right to appeal or had in fact appealed.[39] For instance, in *Peguero v. United States*, the United States Supreme Court held that rule

---

[39] *See, e.g., Tanner v. State*, 624 So. 2d 703, 706 (Ala. Crim. App. 1993) ("[B]ecause the appellant has in fact appealed his convictions and has not suffered any prejudice whatsoever, the error in the failure of the trial court to advise the appellant of his right to appeal is harmless."); *Castro v. Superior Court*, 115 Cal. Rptr. 312, 317 n.13 (Cal. Ct. App. 1974) ("Assuming that counsel was 'ineffective' in failing to inform defendant of his rights[,] no relief on that basis can be granted unless defendant affirmatively alleges that by so informing him counsel would have told him something he did not already know." (citation omitted)); *People v. Boespflug*, 107 P.3d 1118, 1121 (Colo. App. 2004) (holding that the "trial court should conduct an evidentiary hearing to determine whether the defendant was prejudiced"); *Wakily v. State*, 483 S.E.2d 313, 318 (Ga. Ct. App. 1997) (concluding that any error in failing to advise defendant of his appellate rights was harmless because "[i]mmediately after sentencing, appointed trial counsel informed the court that [the defendant] desired to appeal" and "[t]he court immediately appointed appellate counsel"); *People v. Crump*, 801 N.E.2d 1, 5–6 (Ill. App. Ct. 2003) (holding that a defendant waived his right to a direct appeal where he "was substantially advised of his appeal rights," including the fact that the defendant had thirty days to file an appeal); *State v. Dafoe*, 463 A.2d 770, 773 (Me. 1983) (holding that the defendant was not prejudiced because "he was . . . permitted to perfect [a] direct appeal[]"); *People v. Grant*, No. 237899, 2003 WL 21108468, at *4 (Mich. Ct. App. May 15, 2003) (per curiam) (holding that a court's failure to properly advise a defendant regarding the defendant's appellate rights was harmless because "defendant has already appealed his sentence"); *Novak v. State*, 787 S.W.2d 791, 794 (Mo. Ct. App. 1990) (holding that a defendant is not prejudiced by a trial court's failure to inform him of his right to appeal "if the defendant knows of his right to appeal his conviction"); *Wilson v. State*, 833 N.W.2d 492, 498 (N.D. 2013) (holding that a defendant was not prejudiced by a trial court's failure to inform him of his right to appeal because the defendant "had independent knowledge of his right to appeal"); *State v. Fox*, No. 11AP-106, 2011 WL 2201666, at *1 (Ohio Ct. App. June 7, 2011) (holding that a defendant was not harmed by a trial court's failure to mention the right to appeal since the appeal would have had no practical effect on the outcome); *White v. State*, 208 S.E.2d 35, 40 (S.C. 1974) (holding "that there was no reversible error in the trial and that there was not an arguably

(continued)

Opinion of the Court

32(a)(2) of the Federal Rules of Criminal Procedure, requiring the court to advise a defendant who has pled not guilty of his right to appeal, is subject to harmless error analysis.[40] And the Court concluded that the defendant in that case was not prejudiced by the trial court's error in not advising him of his right to appeal since he already possessed independent knowledge of that right.[41]

¶38 Second, several courts have concluded that an error affecting the right to appeal is rendered harmless where the defendant would not have appealed regardless of the error.[42] For instance, in *Roe v. Flores-Ortega*,[43] the United States Supreme Court applied the same "but for" test that we apply in this case to a claim by a defendant that her attorney rendered ineffective assistance of counsel by failing to file a notice of appeal after promising to do so. The Court stated that a defendant would not be entitled to relief "[i]f the defendant cannot demonstrate that, *but for* counsel's deficient

---

meritorious ground of appeal, even if notice of intention to appeal had been timely served"); *Hauck v. State*, 162 P.3d 512, 515 (Wyo. 2007) (concluding that the defendant was denied his right to appeal and noting that "[t]he record does not otherwise reflect that [he] knew of his right to appeal and the process involved to effectuate that right").

[40] 526 U.S. 23, 26–30 (1999). We note that former rule 32(a)(2) has since been replaced by rule 32(j)(1) of the Federal Rules of Criminal Procedure.

[41] *Id.* at 29–30.

[42] *See, e.g.*, *Shelton v. Comm'r of Corr.*, 977 A.2d 714, 721–22 (Conn. App. Ct. 2009) (holding that to establish prejudice a "defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed" (internal quotation marks omitted)); *State v. Patton*, 195 P.3d 753, 767 (Kan. 2008) (requiring a defendant to "prove that, had he or she been properly informed, a timely appeal would have been sought"); *Commonwealth v. Markowitz*, 32 A.3d 706, 716 (Pa. Super. Ct. 2011) ("Where counsel has not advised his client about the client's appellate rights, the question becomes whether that failure caused actual prejudice to the petitioner, *i.e.*, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." (internal quotation marks omitted)).

[43] 528 U.S. 470 (2000).

performance, he would have appealed."[44] It further noted that without this showing, "counsel's deficient performance has not *deprived* him of anything, and he is not entitled to relief."[45] The Court continued that "to show prejudice . . . a defendant must demonstrate that there is a reasonable probability that, *but for* counsel's deficient failure to consult with him about an appeal, he would have timely appealed."[46]

¶39 Moreover, the Supreme Court of Kansas has adopted the "but for" causation test pressed by the State in this case. This is particularly relevant because in *Manning*, we adopted Kansas' approach for assessing reinstatement claims.[47] In *State v. Patton*, the Kansas Supreme Court held that

> [i]f the sentencing hearing transcript demonstrates that the district judge did not adequately inform the defendant orally, and the State is unable to demonstrate that the defendant had actual knowledge of the required information from some other source, the defendant must then prove that, had he or she been properly informed, a timely appeal would have been sought.[48]

The Kansas rule requires a defendant to show both that he was not properly informed regarding his right to appeal *and* that but for this lack of information he would have appealed. The court noted that its holding was supported by two main rationales. First, it stated that this causation requirement "is consistent with this court's original admonition that a defendant may not let the matter rest."[49] And second, the court stated that "we believe [the causation requirement] is true to United States Supreme Court precedent [in *Peguero v. United States*]."[50]

---

[44] *Id.* at 484 (emphasis added).

[45] *Id.* (emphasis added).

[46] *Id.* (emphasis added).

[47] 2005 UT 61, ¶ 29.

[48] 195 P.3d at 767.

[49] *Id.* (internal quotation marks omitted).

[50] *Id.*

Opinion of the Court

¶40 We find the Kansas Supreme Court's approach in *Patton* persuasive. It ensures that reinstatement relief is given only to those defendants who fail to appeal "through no fault of their own."[51] And it is in accord with the position taken by the Supreme Court in *Peguero* and *Flores-Ortega*, as well as a majority of the states, that reinstatement claims should be reviewed for harmless error.

¶41 In the case before us, the court of appeals concluded that the state and federal cases subjecting claims for reinstatement to harmless error review were inapposite because "the large majority of . . . cases [that utilized the harmless error analysis did] so because, unlike [Mr.] Collins, the defendant either appealed anyway or learned of those rights from another source."[52] While neither of those fact patterns occurred here, the point remains that those courts did apply a harmless error analysis to a claim for reinstatement. And the fact pattern now before us has been addressed by several courts, including the United States Supreme Court, and they have also applied harmless error analysis by requiring defendants to show that had they been properly informed of their right to appeal they would have appealed.

¶42 Moreover, the cases applying harmless error analysis do so because "as a general rule, . . . a court's failure to give a defendant advice required by the [rules] is a sufficient basis for . . . relief only when the defendant is prejudiced by the court's error."[53] A mere "technical violation of [a] [r]ule [is] insufficient to justify . . . relief" without a showing of prejudice.[54] And, as we noted in *Manning*, reinstatement is appropriate only where a defendant is "*prevented* in some meaningful way from proceeding" with an appeal.[55] So the mere fact that a majority of the cases applying harmless error analysis involved scenarios where the defendant had independent knowledge of the right to appeal or had actually appealed does not preclude application of the analysis to a scenario where a defendant was not properly informed of his right to appeal, but would not have appealed anyway. A defendant who actually files an appeal or has independent knowledge of the right to appeal, including the relevant

---

[51] *Manning*, 2005 UT 61, ¶ 42.

[52] *State v. Collins*, 2013 UT App 42, ¶ 11, 298 P.3d 70.

[53] *Peguero*, 526 U.S. at 27.

[54] *Id.* at 28 (internal quotation marks omitted).

[55] *Manning*, 2005 UT 61, ¶ 26 (emphasis added) (internal quotation marks omitted).

filing deadline, has not been prevented from proceeding with an appeal and suffers no harm. Similarly, a defendant who had no intention of appealing has not been prevented from proceeding with an appeal and has also suffered no harm.

¶43 In sum, *Manning* provides that reinstatement relief is appropriate only where a defendant establishes that he was "deprived" of the right to appeal. Rule 4(f) contains the same requirement. Implicit in this requirement is the recognition that a defendant who would not have appealed even if properly advised of his right to appeal should not be entitled to reinstatement relief.

### B. Application of Harmless Error Analysis Here Conforms to Our General Approach of Reviewing Errors for Harmlessness

¶44 Moreover, applying harmless error analysis is the general rule, not the exception.[56] A harmless error is one "that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings."[57] We conclude that the general rule governs here because neither the exception for structural errors nor the approach we took in *State v. Alexander*[58] applies here.

### 1. The Exception for Structural Errors is Inapplicable Here

¶45 Structural errors are not subject to harmless error analysis. But the class of errors constituting structural error is narrow. Indeed, "[s]tructural error is reserved for a 'very limited class of cases' in which a constitutional error so undermines the fairness of the proceedings that prejudice must be presumed."[59]

---

[56] UTAH R. CRIM. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded."); *see State v. Neeley*, 748 P.2d 1091, 1095 (Utah 1988) ("We do not presume prejudice upon a showing of an irregularity in the proceedings below; rather, we will closely examine the record to determine the effect the error may have had on the outcome of the proceedings.").

[57] *H.U.F. v. W.P.W.*, 2009 UT 10, ¶ 44, 203 P.3d 943 (internal quotation marks omitted).

[58] 2012 UT 27, 279 P.3d 371.

[59] *State v. Arguelles*, 2003 UT 1, ¶ 94 n.23, 63 P.3d 731 (quoting *Johnson v. United States*, 520 U.S. 461, 468–69 (1997)).

Opinion of the Court

¶46 Structural errors differ from other errors in that they "affect[] the framework within which the trial proceeds"[60] by "infect[ing] the entire trial process" and "render[ing] [the] trial fundamentally unfair."[61] An error is not structural where it is "simply an error in the trial process itself."[62] Among the errors that are deemed structural are: (1) a complete denial of right to counsel, (2) the lack of an impartial trial judge, (3) racial discrimination in grand jury selection, (4) denial of the right of self-representation at trial, (5) denial of the right to a public trial, and (6) an erroneous reasonable-doubt instruction.[63]

¶47 The trial court's failure to properly inform Mr. Collins of his right to appeal in accordance with Utah Rule of Criminal Procedure 22(c)(1) does not constitute a structural error. Although not informing Mr. Collins of the relevant thirty-day deadline was error, the error did not "infect the entire trial process" rendering the "trial fundamentally unfair." Indeed, Mr. Collins's lack of notice regarding the relevant appeals deadline had no effect whatsoever on the "framework" of the trial proceedings, nor does it fit into the class of errors previously defined by the Supreme Court as structural errors.

¶48 Mr. Collins argues that *Rodriquez v. United States*[64] and *Penson v. Ohio*[65] stand for the proposition that the failure by counsel to advise a defendant of the right to appeal is equivalent to the complete denial of counsel. But this argument is misplaced. In *Rodriquez*, the Supreme Court clarified that a defendant seeking reinstatement of the right to appeal need not show "some likelihood of success on appeal."[66] But the Court did not hold, as Mr. Collins suggests, that claims for reinstatement are not subject to harmless error review. In fact, a defendant's burden to establish prejudice with respect to such claims is much lower than showing "some likelihood of success on appeal." To establish prejudice, all a defendant must show is that he would have appealed "but for" the

---

[60] *Johnson*, 520 U.S. at 468 (internal quotation marks omitted).

[61] *Neder*, 527 U.S. at 8 (internal quotation marks omitted).

[62] *Id.* (internal quotation marks omitted).

[63] *Johnson*, 520 U.S. at 469.

[64] 395 U.S. 327 (1969).

[65] 488 U.S. 75 (1988).

[66] 395 U.S. at 330.

court's and his attorney's failure to properly inform him of the right to appeal.

¶49 *Penson* is also distinguishable. There a defendant requested that his attorney file an appeal.[67] The attorney did so but also sought withdrawal from the case because he believed the appeal was meritless.[68] The appeals court allowed counsel to withdraw but then rejected defendant's motion to have new counsel appointed.[69] Instead, the court conducted its own review of the record and ultimately affirmed all but one of the defendant's convictions. The Supreme Court concluded that it was "inappropriate to apply either the prejudice requirement of *Strickland* or . . . harmless-error analysis" because the defendant was "entirely without the assistance of counsel on appeal."[70] Here, Mr. Collins argues only that his counsel did not properly advise him regarding the relevant appeals deadline. He was not, like the defendant in *Penson*, entirely denied the right to counsel.

¶50 Ultimately, the failure to properly inform Mr. Collins of the relevant thirty-day deadline to appeal does not fall within the class of structural errors because it did not "infect the entire trial process" rendering the "trial fundamentally unfair." And because the error was not structural, we apply the general rule that errors must be reviewed for harmlessness.

2. Our Approach in *State v. Alexander* is Inapplicable Here

¶51 The court of appeals also concluded that claims for reinstatement are not subject to harmless error review under the approach we took in *State v. Alexander*.[71] In that case, we held that a defendant seeking to withdraw a plea on the basis that it was not knowing and voluntary need not show prejudice.[72] The court of appeals concluded that *Alexander* applied here because the "holding rests in part on the difficulty of evaluating whether an uninformed

---

[67] *Penson*, 488 U.S. at 77.

[68] *Id.* at 78.

[69] *Id.*

[70] *Id.* 88–89.

[71] 2012 UT 27.

[72] *Id.* ¶ 49.

defendant would, had he or she been informed, nevertheless have pleaded guilty."[73]

¶52 But this practical difficulty was only one of three rationales for our holding in *Alexander*. In fact, the first two reasons we provided for declining to require a showing of prejudice where a defendant seeks withdrawal of a plea related to the language and intent of the rule and statute at issue in that case. Specifically, we noted first that "a showing of prejudice conflicts with our intent when adopting the language of rule 11(l)."[74] And second, we noted that "the Legislature has not required a showing of prejudice. . . . [But instead] provided that defendants need show only that their pleas were not knowingly and voluntarily made."[75]

¶53 Neither of those rationales is applicable here. As to the first rationale, the language of our opinion in *Manning* and rule 4(f) of the Utah Rules of Appellate Procedure implicitly requires, by use of words such as "deprived," a showing of prejudice by the defendant. So whereas in *Alexander* requiring a showing of prejudice conflicted with the language of the applicable rule, rule 11(l) of the Utah Rules of Criminal Procedure, here a showing of prejudice is mandated by rule 4(f) of the Utah Rules of Appellate Procedure and our *Manning* decision. And as to the second rationale, it is inapplicable here given that the Legislature has not enacted a statute governing claims for reinstatement. So even if we assume that the task of determining whether a defendant would have appealed had he been properly informed of the right to appeal will present the same practical difficulties we identified in *Alexander*, these difficulties do not override the fact that the governing caselaw and rule requires that a defendant make a showing of harm.

## II. We Remand for the Trial Court to Consider Whether Mr. Collins Has Met His Burden of Showing That Had He Been Properly Advised of His Right to Appeal, He Would Have Appealed

¶54 Having concluded that Mr. Collins must show that he would have appealed had he been properly informed of his right to appeal, we now turn to a discussion of whether he has satisfied his burden.

---

[73] *Collins*, 2013 UT App 42, ¶ 14.

[74] *Alexander*, 2012 UT 27, ¶ 46.

[75] *Id.* ¶ 47.

¶55 The State argues that Mr. Collins has never claimed that the trial court's and counsel's failure to properly inform him of his right to appeal caused him not to appeal. Instead, the State suggests that Mr. Collins has "consistently claimed that Simms caused him not to appeal by failing to file an appeal when [Mr. Collins] timely asked him to."

¶56 The State's characterization of Mr. Collins's claim is not entirely accurate. In fact, Mr. Collins did testify that he would have acted differently had either the court or Mr. Simms informed him of the thirty-day deadline. He first asserted that had he known of the deadline, he "would have been on it right away, writing letters to whoever I had to or making phone calls or whatever." And when asked specifically if he would have done anything differently had he known of the thirty-day deadline, he testified that had he "would have contacted Mr. Simms and made sure he filed [the] appeal like [he] thought [Mr. Simms] did."

¶57 But it is unclear from the record whether the trial court found any of these statements to be credible. The court did find that Mr. Simms's testimony was more credible than Mr. Collins's testimony. But the only point on which both Mr. Collins and Mr. Simms testified concerned whether Mr. Collins affirmatively told Mr. Simms to file an appeal. Mr. Simms's testimony did not directly address what Mr. Collins might have done had he known of the thirty-day deadline for filing an appeal. And the court did not make a specific credibility finding with respect to Mr. Collins's testimony concerning the thirty-day deadline. Because of this ambiguity, we are unable to determine whether Mr. Collins met his burden of showing that the court's and counsel's failure to properly inform him of his right to appeal caused him to not appeal. Accordingly, we remand the case to the trial court to determine whether Mr. Collins has met this burden, which it can do by holding further hearings on the issue or relying on the existing record.

## Conclusion

¶58 We reverse the court of appeals' decision because the court erred by not reviewing Mr. Collins's claim for harmless error. Both *Manning* and rule 4(f) of the Utah Rules of Appellate Procedure require that a defendant show he was "deprived" of the right to appeal, and so implicitly require a defendant to show that any error affecting his right to appeal caused some harm. Accordingly, we remand this case to the trial court to determine whether Mr. Collins can show by a preponderance of the evidence that the court's and

counsel's failure to properly inform him caused him not to appeal, which it can do by holding further hearings on the issue or relying on the existing record.

――――――――

ASSOCIATE CHIEF JUSTICE NEHRING, dissenting:

¶60 I respectfully dissent. Mr. Collins possessed a right to appeal, protected by the Utah Constitution. The majority reasons that if a defendant claims to have been deprived of his right to appeal, he must demonstrate that he would have appealed had he been properly advised of his appeal rights. I am baffled how a defendant could make the showing necessary to overcome a claim of harmlessness when he did not even know of his right to appeal. A decision to commence or forgo an appeal involves a multitude of considerations. Knowledge of the existence of a right of appeal is, by far, the most important of these considerations. A defendant who does not know he has a right of appeal cannot be penalized for failing to exercise it. Accordingly, I would affirm the court of appeals.

――――――――