**2019 UT App 150**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
WAYLON KEITH RIDDLE,
Appellant.

Opinion
No. 20180599-CA
Filed September 12, 2019

Sixth District Court, Kanab Department
The Honorable Wallace A. Lee
No. 161600142

Dale W. Sessions, Attorney for Appellant

Sean D. Reyes and Jonathan S. Bauer, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1    Waylon Keith Riddle challenges the trial court's denial of his motion to set aside and vacate his convictions on four counts of distribution of a controlled substance. We affirm.

## BACKGROUND

¶2    Three days after Riddle's jury trial was completed, his trial counsel had lunch with the Kane County Attorney, Robert Van Dyke. Van Dyke had not participated in Riddle's trial, which was tried by a deputy county attorney. While they were eating, a man approached Van Dyke to talk about some paperwork. Riddle's counsel recognized the man as one of the

jurors in Riddle's trial. Van Dyke informed counsel that the juror was his personal accountant and that the paperwork referred to was Van Dyke's tax return. Although the jurors had been asked during voir dire about their acquaintance with the lawyers, parties, and witnesses in the case, they were never asked about their relationship to other individuals in the Kane County Attorney's office.

¶3    Based on the business relationship between Van Dyke and the juror, Riddle moved the court to set aside the jury's verdict, vacate his convictions, and order a new trial. Riddle acknowledged that there was no evidence that the juror was actually biased based on his professional relationship with Van Dyke but nevertheless asserted that the juror's relationship with Van Dyke violated his right to a fair and impartial jury. The trial court denied Riddle's motion, and Riddle now appeals.

ISSUE AND STANDARD OF REVIEW

¶4    Riddle asserts that the court erred in denying his motion to set aside the jury's verdict and grant him a new trial. So long as the trial court has correctly applied the law, we review its "ruling on a motion for a new trial under an abuse of discretion standard." *State v. De La Rosa*, 2019 UT App 110, ¶ 4, 445 P.3d 955 (quotation simplified).

ANALYSIS

¶5    Riddle urges us to hold that the very existence of an undisclosed professional relationship between Van Dyke and the juror created an appearance of impropriety that required a new trial. While he asserts that this is a matter of first impression, our case law is clear that a jury verdict need not be reversed on grounds of juror partiality when there is no evidence of bias on the part of the juror.

¶6    Rule 24 of the Utah Rules of Criminal Procedure permits trial courts to "grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party." Utah R. Crim. P. 24(a). "[T]he Fourteenth Amendment Due Process Clause assures each defendant the fundamental right to a fair trial." *State v. Arguelles*, 2003 UT 1, ¶ 97, 63 P.3d 731. "One touchstone of a fair trial is an impartial trier of fact—a jury capable and willing to decide the case solely on the evidence before it." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quotation simplified). Thus, one "error or impropriety," *see* Utah R. Crim. P. 24(a), that may justify granting a new trial to a defendant is the existence of juror bias. Nevertheless, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Likewise, a new trial under rule 24 is appropriate only where the alleged "error or impropriety . . . had a substantial adverse effect upon the rights of a party." Utah R. Crim. P. 24(a). Thus, to obtain a new trial on grounds of juror partiality, the defendant must "prove actual bias" on the part of the juror. *See Smith*, 455 U.S. at 215.

¶7    Riddle concedes that there is no evidence of actual bias in this case but nevertheless asserts that we should employ the doctrine of implied bias to determine that "due to the financial and or emotional relationship between the juror and [Van Dyke] . . . there may indeed have been implied bias." In theory, implied bias may be found "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances."[1] *Johnson v. Luoma*,

---

1. This is essentially the same test used to examine for-cause challenges to jurors based on "[t]he existence of any social, legal, business, fiduciary or other relationship," which examines whether the "relationship when viewed objectively, would suggest to reasonable minds that the prospective juror would be

(continued…)

425 F.3d 318, 326 (6th Cir. 2005) (quotation simplified). However, the continued viability of this doctrine has been in question since the United States Supreme Court adopted the actual bias requirement in *Smith v. Phillips*, 455 U.S. 209 (1982), and the Supreme Court has never explicitly endorsed the concept of implied bias. *See English v. Berghuis*, 900 F.3d 804, 816 (6th Cir. 2018).

¶8　But even assuming, without deciding, that the doctrine remains viable, Riddle has presented no evidence from which the trial court could have determined that the relationship between the juror and Van Dyke implied that the juror was biased. Implied bias applies only to "extreme situations" such as where it is revealed "that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Smith*, 455 U.S. at 222 (O'Connor, J., concurring); *see also Johnson*, 425 F.3d at 326. This is not such a situation.

¶9　The trial court stated that had it known that the juror was Van Dyke's accountant, it "would not have found that to be a valid basis for a challenge for cause," especially given the "small community" in which the trial took place. The court found that the "relationship would not suggest to reasonable minds that that juror would be, simply by virtue of that relationship, unable or unwilling to return a verdict which would be free of favoritism." *See* Utah R. Crim. P. 18(e)(4). We see no error in the trial court's findings.

¶10　Riddle presented the court with no information regarding the relationship between the juror and Van Dyke apart from the fact that the juror was Van Dyke's accountant. Nothing in the

---

(…continued)
unable or unwilling to return a verdict which would be free of favoritism." Utah R. Crim. P. 18(e)(4).

nature of this professional relationship, by itself, calls into question the juror's ability to remain indifferent and impartial. *Compare United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977) (holding that it could be inferred that employees who worked at a different branch of the bank the defendant was accused of robbing would be biased due to their "potential for substantial emotional involvement"), *and State v. Brooks*, 563 P.2d 799, 800– 02 (Utah 1977) (determining that a juror who was a "neighbor and personal friend of the prosecution's witness" and another juror who was "good friends" with the arresting officer and a coworker of his wife could not be "deemed indifferent or impartial" and that the trial court had committed prejudicial error in declining to dismiss them for cause), *with United States v. Bradshaw*, 787 F.2d 1385, 1390–91 (10th Cir. 1986) (holding that the fact "that a juror had prior business dealings with key government witnesses," without more, was insufficient to establish juror impartiality), *and State v. Evans*, 2001 UT 22, ¶ 28, 20 P.3d 888 (holding that "the existence of a familial relationship between a juror and a member of the District Attorney's office, in and of itself, is not necessarily the basis for a challenge for cause" (quotation simplified)). Moreover, Van Dyke did not even participate in the case. Riddle himself asserts only that the relationship "may" have resulted in implied bias. But a mere possibility of bias is insufficient to demonstrate implied bias, let alone actual bias.

¶11 It is axiomatic that, with rare exceptions, "all errors are reviewed for harmlessness." *State v. Collins*, 2014 UT 61, ¶ 28, 342 P.3d 789; *see also* Utah R. Crim. P. 24(a) (stating that a new trial may be granted only "if there is any error or impropriety which had a substantial adverse effect upon the rights of a party"); *id.* R. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded."). "To conclude that an error was prejudicial, we must find not a mere possibility, but a reasonable likelihood that the error affected the result." *State v. Maestas*, 2012 UT 46, ¶ 308, 299 P.3d 892 (quotation simplified). By asserting that the business relationship between the juror and Van Dyke was alone

sufficient to require the court to find that Riddle did not have a fair trial, Riddle is essentially asking us to presume prejudice.[2] This we cannot do under the circumstances of this case. Because Riddle made no showing of bias on the part of the juror, the trial court did not err in concluding that empaneling the juror did not have "a substantial adverse effect" on Riddle's rights and denying Riddle's motion to set aside the jury's verdict.[3] *See* Utah R. Crim. P. 24(a).

---

2. Riddle does assert that he was denied the opportunity to employ a peremptory challenge. But to the extent that this argument can be construed as an allegation of prejudice, it does not provide a basis for reversal in the absence of juror bias. *See State v. Evans*, 2001 UT 22, ¶ 29, 20 P.3d 888 (rejecting a defendant's assertion that he was prejudiced by his "inability to use a peremptory challenge" because the "defendant had not asserted that the jury that sat was partial or biased"); *cf. State v. Sessions*, 2014 UT 44, ¶ 52, 342 P.3d 738 (holding that to satisfactorily challenge the loss of peremptory challenges, a defendant must establish "that an actually biased juror sat on the panel that convicted him").

3. In addition to analyzing Riddle's motion pursuant to rule 24, the trial court employed the two-part test concerning juror bias annunciated in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984). In *McDonough*, a juror failed to respond to a question regarding whether he or anyone in his family had ever "sustained any severe injury . . . that resulted in any disability or prolonged pain and suffering." *Id.* at 550 (quotation simplified). The Court held "that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556. Riddle asserts that the trial court's reliance on *McDonough* was misplaced because there was no allegation in this case that a juror answered a question

(continued…)

CONCLUSION

¶12   Because Riddle presented no evidence to suggest that the juror's relationship with Van Dyke resulted in either implied or actual bias, he cannot establish that he was denied his right to a fair trial due to jury partiality. We therefore affirm the trial court's denial of his motion to set aside the jury verdict.

––––––––––

(…continued)

untruthfully. While the *McDonough* test is not directly on point here, it is not entirely inapplicable. The second prong of the *McDonough* test examines whether "a correct response would have provided a valid basis for a challenge for cause." *Id.* As discussed above, this is the same test used to examine implied juror bias. *See supra* ¶ 7 & note 1. The trial court determined that it would not have sustained a for-cause challenge in this case even if it had known of the relationship between Van Dyke and the juror because the "relationship would not suggest to reasonable minds that that juror would be, simply by virtue of that relationship, unable or unwilling to return a verdict which would be free of favoritism." This was merely a restatement of the court's rule 24 determination that Riddle did not demonstrate an "impropriety which had a substantial adverse impact upon" his rights because there was "no evidence that th[e] juror was biased against" Riddle. Thus, even accepting Riddle's assertion that the *McDonough* test was not applicable in this case, any error by the court in employing *McDonough* was harmless because the outcome is the same under either a rule 24 or a *McDonough* analysis.